BONE *et al.*, v. TYRRELL *et al.*, *Appellants*.

Division One, December 22, 1892.

1. **Will:** ESTATE TAIL: STATUTE. A devise of land to a granddaughter "to have and to hold the same to her and her children, heirs of her body forever" passed an estate in fee tail, which, under the statute then in force (Revised Statutes, 1845, sec. 5, page 219), was converted into an estate for life in the granddaughter with remainder in fee to her children.

2. **Conveyance:** LEGISLATIVE AUTHORITY: CONDITION PRECEDENT. Where a special act of the legislature authorized such granddaughter and her husband to sell and convey the land so devised, the conditions precedent prescribed in such act must have been complied with or no title passed.

3. **Guardian:** SALE OF WARD'S LAND: APPROVAL OF COURT. A sale by the guardian of his ward's land, under Revised Statutes, 1855, secs. 24, 27, pages 826–7, authorizing the county court to order such sale for the education of the minor, is insufficient to pass even an equitable title, where, though ordered, such sale was not approved by the court.

4. ———: ———: EJECTMENT: REIMBURSEMENT OF PURCHASE MONEY. Nor does such sale entitle the purchaser when ejected by the ward to demand from him a return of the price paid the guardian for the land where it does not appear that the guardian paid the money to the ward or used it for his benefit.

5. **Tenant For Life:** TAXES: REPAIRS. A tenant for life is bound to keep up the repairs and pay the annual taxes, and cannot recover therefor when ejected by the remaindermen, even though he holds under a deed which purports to convey the fee.

*Appeal from Knox Circuit Court.*—HON. BEN E. TURNER, Judge.

AFFIRMED.

*L. F. Cottey* for appellant.

(1) The law of this state upon the question of judicial sales made by the county and probate courts may be summarized as follows: *First.* Where the sale of real estate can be shown to have been made in compliance with the statute, a good legal title passes to the purchaser. *Second.* Where the sale is irregular and not in compliance with the statute, so much so that it could not be upheld in a direct proceeding on appeal or otherwise, if the purchaser has in good faith fully complied with the terms of sale on his part, and paid the purchase money, the law creates an equity for a title, which the courts will enforce in favor of such good faith purchaser in possession, by denying recovery in ejectment. *Third.* When the deed is void, no title, legal or equitable, passes to the purchaser, but the law creates an equity in favor of a good faith purchaser at a void sale for the return of the purchase money, taxes paid and improvements made, with six per cent. interest, which shall be a lien on said land for the benefit of such purchaser, and possession will be withheld until it is paid. *Shroyer v. Nickell*, 55 Mo. 264; *Jones v. Manly*, 58 Mo. 259; *Evans v. Snyder*, 64 Mo. 516; *Sims v. Gray*, 66 Mo. 613; *Long v. Mining Co.*, 68 Mo. 422; *Schafer v. Causey*, 76 Mo. 365; *Exendine v. Morris*, 76 Mo., 416; *Bagby v. Emberson*, 79 Mo. 139; *Henry v. McKerlie*, 78 Mo. 416; *Moore v. Davis*, 85 Mo. 464; *Camden v. Plain*, 91 Mo. 117; *Sherwood v. Baker*, 105 Mo. 472. (2) The same liberal intendments attend the acts and doings of probate courts in regard to all matters within their jurisdiction and to which that jurisdiction has attached, as attend the acts and doings of courts of general jurisdiction, and such judgments are conclusive in collateral proceedings. *Camden v. Plain*, 91 Mo.

117; *Rowden v. Brown*, 91 Mo. 429; *Price v. Real Estate Ass'n*, 101 Mo. 107; *Sherwood v. Baker*, 105 Mo. 472, 476. (3) The sale must be held to be a sufficient compliance with the special act of the legislature found in the acts of 1855, page 558. See also Special Acts of 1860, page 651; *Exendine v. Morris*, 8 Mo. App. 383; *Exendine v. Morris*, 76 Mo. 416. (4) The bond given by John Bone, filed with the clerk of the county court, and approved by the county court was more nearly a compliance with the act of 1855 than was the attempted bond of Bennett a compliance with the act of 1860, which was held to be a sufficient compliance with said act of 1860. (5) The bond of John Bone, if not in literal compliance with said act of 1855, was, nevertheless, in all respects a fair compliance with the terms of said act, and was sufficient under said act to have protected "any person aggrieved by the unfaithful performance of said John Bone." Acts of 1855, page 558; *Jean v. Horn*, 94 Mo. 162. (6) The form of the deed was in strict compliance with the terms of said act. *Hill v. Atterberry*, 88 Mo. 114, and other like cases.

*O. D. Jones* for respondents.

(1) It is admitted the will of John Bone, Sr., vested in Elizabeth Bone a life estate, remainder in fee in her children, and the plaintiffs are her children and the heirs of those who were minors at the time of the death of John Bone, Sr., and the making of the deed to Callahan under which the defendants claim, and since deceased. *Kinnie v. Matthews*, 69 Mo. 520; *Menier v. Land Co.*, 72 Mo. 473; *Phillips v. LaForge*, 89 Mo. 72; *Waddell v. Waddell*, 99 Mo. 338; *Rodney v. Landau*, 104 Mo. 250. (2) The special act plead

in evidence is unconstitutional, both as to the state and federal constitutions. It is an attempt to take, and authority, if any, to take plaintiffs' property without "due" or any "process of law," and not according to "law of the land." (3) So the act was not complied with as to the requirement of a bond and reinvestment. (4) An order of sale, if properly made, is void if the sale is not approved. *Valle v. Fleming*, 19 Mo. 454; *Evans v. Snyder*, 64 Mo. 516; *Patti v. Mowry*, 59 Mo. 161. (5) No recovery of purchase money in such case can be had unless there was fraud in procuring the sale and their money for the deed. *Carter v. Harber*, 18 Mo. 204; *Lewis v. Rogers*, 23 Mo. App. 503; *Maybery v. Moore*, 90 Mo. 340; *Harkless v. Barton Co.*, 85 Mo. 619. "When there is no fraud and a party accepts a quitclaim deed he is without remedy." *Smith v. Funk*, 57 Mo. 239. They succeeded to just such title as their grantors had. *Kearney v. Vaughn*, 50 Mo. 284; *Broadwell v. Merritt*, 87 Mo. 95; *Schradski v. Albright*, 93 Mo. 42. Such a deed does not create a right on which to found a claim for the recovery of the purchase money. *Botsford v. Williams*, 75 Ill. 132; *Galloway v. Findlay*, 12 Pet. (U. S.) 294; *Patterson v. Tyler*, 7 How. (U. S.) 132.

BRACE, J.—This is an action in ejectment for a tract of land in Knox county, in which the plaintiffs obtained judgment in the court below for five eighths of the premises, and the defendants appeal.

The facts are, that in 1849, John Bone, Sr., being seized in fee simple of the land in dispute, died, having first made a will by which he devised the same in manner following, to-wit:

"I also give and bequeath to my granddaughter the following real estate, to-wit: The east half of the northeast quarter of section 33; also the southwest

quarter of the northeast quarter of section 33, all in township 63 of range 11, containing 120 acres, together with all the improvements thereunto appertaining, to have and to hold the same to her and her children, heirs of her body forever."

The granddaughter mentioned in this provision of his will was Elizabeth Bone, wife of John Bone, Jr., having at the time eight minor children.

By an act of the general assembly approved February 27, 1855, entitled "an act for the benefit of Elizabeth Bone and her children" reciting in the preamble the devise aforesaid, it was provided: "That John Bone and Elizabeth Bone, his wife, may, and they are hereby authorized to, sell said tract, given to her and to her children, heirs of her body, by John Bone, Sr., deceased, either at public or private sale, and convey the same to the purchaser or purchasers in fee simple absolute, by deed or deeds, executed and acknowledged in the usual form, free from all claim and title of the children of said Elizabeth, now or hereafter, the said John Bone first giving bond with sufficient security, payable to the state of Missouri, in double the value of said land, to be approved by the county court of said county, conditioned that, upon the sale of said land, he will faithfully reinvest the money arising from said sale in real estate in said state within a reasonable time thereafter, and take the title to the same to said Elizabeth Bone and to her children, heirs of her body, as said lands are devised to them by said will, which bond shall be filed in the office of the clerk of the county court, and may be sued on by any person aggrieved by the unfaithful performance of said John Bone." Laws 1855, p. 558.

Afterwards on the seventh of March, 1859 three of Elizabeth Bone's children having become of age, the said John Bone, Jr., was appointed by the county

court of Knox county guardian and curator of the five minors, and on the next day qualified as such by executing bond in the sum of $1,000, approved by said court. Afterwards on the third day of May, 1859, upon the petition of the said John Bone as guardian and curator as aforesaid, representing that said minors had no personal estate and no means to defray the necessary expenses of their maintenance and education except their interest in said real estate, it was ordered by said county court that the "five eights of said real estate belonging to said minors be sold at private sale and if not sold at private sale to be sold at public sale at the courthouse door in the town of Edina at the October term of the circuit court, one third of the purchase money to be paid in cash, one third in twelve and the remainder in eighteen months, deferred payments to bear ten per cent. interest."

Afterwards on the fourteenth day of July, 1859, the real estate was duly appraised at the value of $1,200 for the whole tract, and of $150 for the share of each of said five minors, and the appraisement on the same day returned and filed in said court. It does not appear that any other or further proceedings were ever had in said court touching the matter. Afterwards on the twenty-seventh day of October, 1859, the said John Bone, Jr., Elizabeth his wife, and her three adult children executed, acknowledged and delivered the following deed:

"Know all men by these presents that I, John Bone, guardian of William Bone, James K. P. Bone, Thomas M. Bone, Albert F. Bone and Clements S. M. Bone, have in conformity, to an order of the county court of Knox county, Missouri, and Maranda B. Bone, Mary Bone, George A. Bone, and Elizabeth Bone, the wife of said John Bone, this day, for and in consideration of the sum of $1,150 to them in hand paid by

Aaron Callahan, of the county of Knox, in the state of Missouri, granted, bargained and sold unto the said Aaron Callahan the following described tract or parcel of land situate in the county of Knox, in the state of Missouri: That is to say, east half of the northeast quarter of section 33, and the southwest quarter of northeast quarter of section 33, in township 63, range 11 west, in Knox county, Missouri, to have and to hold the premises hereby conveyed, with all the rights, privileges and appurtenances thereto belonging, or in anywise appertaining, unto the said Aaron Callahan, his heirs and assigns forever; we, the said parties of the first part, hereby covenanting to and with the said Aaron Callahan, his heirs and assigns, for themselves, their heirs, executors and administrators to warrant and defend the title to the premises hereby conveyed against the claim of every person whatsoever.

"In witness whereof we have hereunto subscribed our names and affixed our seals, this the twenty-seventh day of October, A. D. 1859.

"[SEAL]     JOHN BONE,
"[SEAL]     ELIZABETH (her X mark) BONE,
"[SEAL]     MARANDA B. BONE,
"[SEAL]     MARY ALICE BONE,
"[SEAL]     GEORGE E. BONE."

In the year 1859, Callahan went into possession of the premises under this deed, and he and his grantees have ever since been in the continuous, adverse possession of the same. The title of the defendants who are in possession now is regularly deraigned from him.

On the thirtieth day of January, 1889, Elizabeth died, and on the ninth of April, 1890 this suit was commenced by the plaintiffs, who are three of the five children of Elizabeth Bone who were minors in 1859, and the representatives of the other two deceased named in the foregoing deed of John Bone et al., dated

the twenty-seventh day of October, 1859, and of whom the said Bone was then guardian.

I. The grant in the devise is to Elizabeth Bone, and standing alone under the statute would have been sufficient to pass the fee simple title of the grantor to her (Revised Statutes, 1845, p. 219, sec. 2); but this grant, being immediately limited by a *habendum* clause, "to her and her children, heirs of her body, forever," had the effect of passing to her only an estate in fee tail under the statute of thirteenth Edward the first, which under the statute of this state became an estate for life in the said Elizabeth, remainder in fee simple to her children. Revised Statutes, 1845, sec. 5, p. 219.

The deed of the Bones to Callahan of October, 1859, passed the life estate of the said Elizabeth and the fee simple title of the three adult children to him; but, unless it also passed the fee simple title of the five minor children, the plaintiffs are entitled to recover five eights of the premises as ousted tenants in common, for, their right of action as such having first accrued upon the death of the said Elizabeth in 1889, there is no question of title by adverse possession in the case.

II. The important inquiry is, did John Bone, Jr., have power to sell and convey the interest of the five minor children of Elizabeth, and, if so, from what source did he obtain it.

We are first pointed to the special act of the legislature of 1855 as conferring that power. The very interesting question at once suggested and argued at some length in the briefs of counsel, "whether under the constitution of 1820 the legislature could directly authorize the sale of a minor's property by one occupying no fiduciary relation to such minor, without judicial process and inquiry," has, since the adoption of the Constitution of 1865 and 1875, become of no general importance; and for the purposes of this

case we find it unnecessary to resolve it. The legisla-
ture did not undertake to confer on John Bone, Jr.,
absolute power to sell and convey the real estate of the
minor children of Elizabeth Bone; the grant was a
conditional one, and the condition was a condition
precedent without the performance of which he had no
power whatever to make such sale and conveyance, and
he did not perform or pretend to perform that condi-
tion, in that he did. not first before the sale give "bond
with sufficient security, payable to the state of Missouri
in double the value of said land, to be approved by the
county court of said county, conditioned that upon the
sale of said land he will faithfully reinvest the money
arising from said sale in real estate in said state within
a reasonable time thereafter, and take the title to the
same to said Elizabeth Bone and to her children heirs
of her body."

But on the contrary, nearly five years after the act
was passed, and after three of the children had become
of age, and the situation upon which the act was predi-
cated had been entirely changed, he qualified as guard-
ian and curator of the estates of the five minor children
under the general law, and in that capacity prayed for
and was given conditional power to *sell the undivided
interest* of the five minor children, not for reinvest-
ment, but for the education and maintenance of said
minor children. Under this supposed power he alone
pretends to have acted in the deed made to Callahan,
and if that conveyance is valid as to these minors, it is
so solely by reason of the power vested in him as
guardian and curator by the county court of Knox,
under whose order he alone assumed to act.

III. In the general law in force at the time these
proceedings were had, no provision was made for the
sale of the lands of a minor for *reinvestment* by an
order of the county court; but such court was author-

ized to "order the *proper education* of minors" and for that purpose, when the personal estate was insufficient or inapplicable, to order the "lease or sale of real estate * * * or that the same be mortgaged * * * to raise the funds necessary to complete the education of such minor." 1 Revised Statutes, 1855, sec. 24, p. 826. Such sale was to be "advertised and conducted in the same manner as now provided by law for advertising and conducting sales of real estate of deceased persons made by executors and administrators for the payment of debts." 1 Revised Statutes, 1855, sec. 25, p. 826. And whenever so sold by any guardian or curator it was made his duty to report such sale to the court ordering the sale, "in the same manner as executors and administrators are now required by law to report sales of real estate made by them for the payment of debts; and such sale, *if approved* by said court, shall be valid to all intents and purposes;" if not approved the court is authorized to renew the order. 1 Revised Statutes, 1855, sec. 27, p. 827. The act further provided that "guardians and curators, having received payment of the purchase money for any real estate sold by them, according to the provisions of this act, shall execute and deliver to the purchaser or purchasers thereof deeds of conveyance for the same, referring in apt and appropriate terms to the order of the court, the advertisement, the appraisement and description of the real estate, the time, place and terms of sale and the payment of the purchase money (which recitals shall be *prima facie* evidence of the facts so recited) and conveying to such purchaser or purchasers all the right, title and interest of the ward in the real estate so sold." 1 Revised Statutes, 1855, sec. 28, p. 827; and that such deed when acknowledged and recorded as other instruments conveying real estate shall be received in evi-

dence in all courts of this state without further proof. 1 Revised Statutes, 1855, sec. 29, p. 827.

The deed of John Bone *et al.* to Callahan is neither executed nor acknowledged by Bone as guardian or curator of said minor children, does not purport to convey their interest in the real estate in question, does not contain the recitals required by the statute and does not show a sale made by him as such guardian or curator in accordance with the order of the county court, nor that the deed was made by virtue thereof; and did not have the effect of passing the legal title of said minors in the land in question to said Callahan.

IV. Although the deed failed to pass title, yet, if Callahan purchased the interest of these children at a valid sale of their interest by their guardian or curator for an adequate consideration and paid the purchase money, he and his grantees would have an equity for a title that would avail the defendants as a defense in this action. *Sherwood v. Baker*, 105 Mo. 472, and cases cited. The evidence upon this point tends to show that Callahan bought the property from John Bone at private sale and paid $1,150 cash for it, and that was about the value of the land, and that he thought he was getting the whole title to it.

In the law under consideration it does not seem to have been the intention of the legislature to invest county courts with the power to order the sale of real estate of minors for any other purpose than their education. Revised Statutes, 1855, *supra*, sec. 24. But as we held in *Strouse v. Drennan* 41 Mo. 290, that, where a sale was made for the education as well as the support of the ward, the jurisdiction of the county court would be sustained and the sale not held void for that reason, this point need not be further considered. It may also be doubted whether under this law the county court could authorize a curator to sell his ward's

real estate at private sale.     Revised Statutes, 1855,. *supra*, sec. 25. . But for the purposes of this case let it be conceded that it could.   The records of the county court were introduced in evidence and there is not a. jot or tittle of evidence in them, or, for the matter of that, from any other source, that this sale was ever reported to the court or approved by it in any manner whatever.   In fact, the county court never did any act either in regard to the sale petitioned for, or in the matter of the curatorship of these children after the order of sale was made, so far as the evidence in this case shows.   Nor did the curator do any act in regard thereto in said court after he filed the appraisement of the land.   Now, it is perfectly plain, upon the face of this statute, that the validity of a curator's sale under it, whether public or private, depends upon its approval by the court  (Revised Statutes, 1855, *supra*, sec. 27); without such approval there is no judicial sale and no equity for a title.   The estates of infants have this protection guaranteed them by the statute, and it is not in the power of courts to dispense with it.   The four facts upon which an equity for  a title, as here contended for, rests are:  An order of sale, a sale made by the curator under it, payment of the purchase money, and an approval of the sale by the court.   The numerous. decisions of this court cited by counsel in their briefs illustrate fully the disposition of this court to uphold judicial sales, in cases where sales can properly be so called; but none of them go or could go to the extent of upholding a sale of which there is no evidence whatever that it ever received judicial sanction. There is no  evidence in this case; of record or otherwise, upon which to hang a presumption that this sale was ever approved by the county court.

V.  It is next contended that, although the defendants may have no title nor an equity for a title, yet

they have an equity for the return of so much of the purchase money as it may be supposed was paid by Callahan for the interests of the minor children in the land. The equity here invoked rests upon the principle that, when in ejectment the beneficiary of a void judicial sale of real estate seeks to recover the possession from a purchaser in good faith at such sale, a recovery will be withheld until such beneficiary restores the purchase money so paid. This claim would have a foundation upon which to rest, if it had appeared that these minor children had become the beneficiaries of this sale. But it does not appear that they were ever benefited thereby, or that a dollar of the purchase money paid by Callahan to Bone ever came to them in any manner whatever. Of course upon no principle of equity could they be called upon to restore that which they never received.

*The statutory* enactment, that no person who shall in good faith pay money to one acting in a fiduciary capacity, *authorized* to receive the same, shall be responsible for the proper application of such money, or his title affected by a misapplication by the trustee and the decisions cited by counsel to the same purport, have no application whatever to the claim now being considered. If the curator had been invested with power to consummate the sale and receive the purchase money without the approval of the county court, then Callahan, although he did not get a legal title by the deed, would have had an equity for a title, and that equity would not have been affected in any manner by a misapplication of the purchase money by Bone. As we have seen, he never acquired such an equity, but by this claim is seeking to build up an equity for a return of the purchase money paid at a sale without judicial sanction, an equity which could have no exist-

ence unless the purchase money went to the minor children, of which there is not a particle of evidence.

VI. A claim is made also for the amount of the annual taxes paid by the defendants and their grantors on the land, and for improvements. In regard to this claim it is sufficient to say that the evidence shows that no permanent improvements were made by which the value of the property was enhanced; and that the defendants as tenants of the life estate were bound to keep up the repairs and pay the annual taxes.

The judgment is for the right party and is affirmed. All concur.