JAMES D. LOWRY, Respondent, v. FARMINGTON PROS-PECTING AND MINING COMPANY, Appellant.

St. Louis Court of Appeals, February 25, 1896.

1. **Quantum Meruit:** SERVICES PERFORMED UNDER EXPRESS CONTRACT FIXING .THE COMPENSATION AND MAKING IT CONDITIONAL. A party who performs services under an express contract which fixes this compensation, and moreover makes it conditional upon the accomplishment of a stated result, is not entitled to any compensation whatsoever if he fails to comply with the condition, unless his failure is caused by the unwarranted interference of the other party; while, if he fulfills the condition and performs the contract, he is entitled, not to the reasonable value of his services, but only to the compensation fixed by the contract.

2. ——: ——: RELEVANCY OF EVIDENCE: INSTRUCTIONS. Accordingly, when there is no such interference, evidence of the reasonable value of his services is irrelevant, and an instruction which authorizes a recovery without regard to the condition is erroneous.

3. **Agency, Proof of:** ACTS AND DECLARATIONS OF ALLEGED AGENT. One who sues for services alleged to have been performed by him as agent of the defendant may, after first establishing the alleged agency, show the services performed by him; but it is not competent for him to prove the agency by his own acts or declarations, or by what passed between himself and third persons in the absence of his ·alleged principal.

*Appeal from the St. Francois Circuit Court.*—HON. JAMES D. FOX, Judge.

REVERSED AND REMANDED.

*Wm. Carter* and *K. W. Weber* for appellant.

*M. R. Smith* for respondent.

ROMBAUER, P. J.—The plaintiff sues to recover the reasonable value of the following services, which his petition claims were rendered by him to the defendant at its instance and request, to wit:

1. For procuring, and aiding in the procurement of, certain interests in certain mining properties in the county of St. Francois .................................................................$1,000.00
2. For services in purchasing certain judgments for defendant ............................................................................... 175.00

$1,175.00

The petition gives credit for cash received on account in the sum of .............................................................................$ 224.60

Leaving the balance sued for.................................................$ 950.40

The defendant's answer states that the plaintiff rendered no services to the defendant at its request in procuring the purchase of the mining interests. The answer further states that the plaintiff did, of his own motion, render services to the defendant in purchasing certain judgments, and that the defendant had fully paid him for such services. The new matter in the answer is denied by reply. The cause was tried by a

jury, and the plaintiff recovered a verdict and judgment for $500, from which the defendant prosecutes the present appeal.

The errors complained of are the admission of illegal evidence, the giving of erroneous instructions, and the refusal of the trial court to set aside the verdict as the result of prejudice on part of the jury.

For the purpose of an intelligent review of these assignments, it is necessary to state briefly the facts as they were shown upon the trial. The defendant is a corporation, and its directors at the dates hereinafter stated were. Tetley, Logan, Rodach, Weber and Seitz. The defendant bought certain mining lands in St. Francois county in the spring and summer of 1892, and the first item in plaintiff's account is for services rendered to the defendant in that purchase. Touching the terms of his engagement the plaintiff testified as follows: Some time in March, 1892, he met Tetley and Weber. Weber told him the company would like to get the property for $36,000 in all, and would pay him (plaintiff) $1,000 for his compensation. Weber thereupon remarked to Tetley they had better get Lowry to secure the property, and Tetley said all right. In a subsequent conversation when Weber, Tetley, and Rodach were present, Weber told plaintiff, in the presence of the two other directors, that he would give him for his services the difference between $37,000 and what the property would cost less than that amount. At a subsequent time the plaintiff met Rodach, Logan and Tetley, when Rodach asked plaintiff: "What do you think this whole property could be finished up for?" Plaintiff said, "I think $37,500." Rodach replied that if plaintiff could buy the property for $37,500, they would pay him $1,000. All the testimony conceded that the plaintiff did render some valuable services in negotiating with the various parties interested for the

purchase of the property, although the testimony as to the cost of the property varied materially. It was also conceded that plaintiff rendered valuable services in procuring the assignment of certain judgments to the defendant.

The directors of the defendant denied that they made any of the statements which plaintiff claimed they had made to him. All of them testified that they had no information whatever that the plaintiff, in the negotiations for the property, was pretending to act as agent for them or the corporation, but were under the impression that he represented the persons interested in the property.

On the second day of July, 1892, the defendant drew its check for $224.60, and Weber, one of the directors, delivered it to the plaintiff, as defendant claims, in payment of plaintiff's services for negotiating the assignment of the judgments to defendant. Weber states he delivered the check to plaintiff in Carter's office, which was adjoining his own, and stated to him at the time, in the presence of Carter, that the board of directors authorized him to deliver the check to plaintiff in payment of all his services. In this statement he is corroborated by Carter. The plaintiff admits that he received and used the check, but denies that Weber told him at the time that it was in full of his services, and claims that Weber simply said the board of directors told him to hand over the check and thank plaintiff for his services. The plaintiff, however, in his cross-examination states that Weber told him in leaving the office that the check was in full payment of all his services, to which the plaintiff replied, that he did not so understand it or accept it. In this last statement he is contradicted by both Weber and Carter. The plaintiff admitted that he did not for several months after the receipt of the check advance any

claim for further compensation, and the defendant's officers testified that he did not advance any further claim for almost one year thereafter.

The court permitted the plaintiff, against the defendant's objection, to detail what passed between him and the various owners of the property negotiated for. The court also permitted the plaintiff, against similar objections, to prove by himself and other witnesses the reasonable value of services in negotiating for the purchase of property at a sum of $37,000, and more. Exceptions were properly saved to such rulings. After testifying that his services were reasonably worth $1,500, the plaintiff was asked why he did not sue for $1,500, and replied, "We had supposedly agreed on $1,000." Being then asked, "Do you consider that a bargain to pay you $1,000 for completing the work," he replied, "Yes, sir."

We have thus fully set out the facts, because the defendant contends that the case was tried on an erroneous theory throughout, while the plaintiff contends it was tried on a theory admissible under the rules established in *Mansur v. Botts*, 80 Mo. 651, and subsequent cases.

A careful examination of the record has satisfied us that in this contention the defendant is right. The plaintiff sued on a *quantum meruit*, and started out by giving evidence of a special engagement to buy this property at a certain cost. He gives three different versions of it—the first, that he was to receive $1,000, if he purchased the property for defendant at $36,000; the next, that he was to receive whatever less the property cost than $37,000; the third, that he was to receive $1,000 if he purchased it at $37,500. Whichever of these three versions should be found by the jury to have been the contract between the parties, it is clear that the reasonable value of services in negotiating for

property had nothing to do with the question. If the plaintiff fulfilled his contract, he was entitled to the amount of the compensation fixed; if he was prevented from fulfilling his contract owing to the defendant's unwarranted interference, he was entitled to the reasonable value of his work, regardless of the contract price. If neither the one nor other of these events happened, the plaintiff was entitled to nothing. The court, therefore, erred in admitting evidence of the usual and customary commissions of real estate agents in such cases. That evidence could have no bearing on the question whether plaintiff had earned his compensation, as under his own evidence he was entitled to compensation conditionally only. There is nothing in the cases of *Crump v. Rebstock*, 20 Mo. App. 37, *Williams v. Railroad*, 112 Mo. 491, or *Moore v. Gaus Manufacturing Company*, 113 Mo. 187, that would justify such a course.

The plaintiff gave evidence tending to show that the property cost the defendant $34,200. The defendant gave evidence tending to show that four fifths of the property cost $34,599.60, which would make the aggregate cost of the property, taking the last fifth at the same valuation, to be between $42,000 and $43,000. If the defendant's evidence as to the cost is to be believed, the plaintiff was entitled to nothing even if he rendered the services at defendant's request, because, under his own evidence, the aggregate cost of the property to defendant at a limited figure furnished the basis for any compensation whatever. Yet the court of its own motion instructed the jury as follows:

"You are instructed that, if you believe and find from the evidence in this cause that the plaintiff, at the instance and request of the agents of the defendant, rendered certain services to the defendant in aiding it in the procurement of certain interests in lands in St.

Francois county, Missouri, and in the purchasing of a certain judgment of William Shannon *et al. v.* John T. Burks and Morris Rosenthal, you will find the issues for the plaintiff, and assess his damages at such sum as you may believe and find from the evidence in the cause was the reasonable value of the services rendered by the plaintiff for the defendant.''

It is evident that the jury might have found every fact stated in this instruction for the plaintiff, and yet the plaintiff would have been entitled to nothing, unless the jury further found that the cost of the property to defendant did not exceed the limit placed upon it in plaintiff's engagement as testified to by himself.

It was also error to admit evidence of conversations between the plaintiff and the owners of the property in the absence of any of defendant's officers. This evidence not only was hearsay, but also had a tendency to mislead the jury as to the true issues in the case. The defendant denied that the plaintiff ever acted in these matters as its agent, and, while it was competent for the plaintiff to show, having first given evidence of his agency, that he performed certain work for the defendant, it was not competent for him to prove such agency by his own acts or declarations, or by what passed between him and third parties in the absence of defendant's officers and without their knowledge.

These errors of the court can furnish the only explanation of a verdict, which is not only opposed to the weight of the evidence, but which as to exact amount is supported *by no evidence whatever*. Hence, we must conclude that they were prejudicial to the defendant.

All the judges concurring, the judgment is reversed and the cause remanded.