JOHN M. SHRIGLEY v. CHAS. C. BLACK *et al.*

No. 13,160.   (71 Pac. 301.)

BRETTUN CRAPSTER *et al.* v. JOHN M. SHRIGLEY *et al.*

No. 13,165.   (71 Pac. 301.)

SYLLABUS BY THE COURT.

1. MORTGAGE— *Tax Deed to Mortgagor—Estoppel.*   A mortgagor of real estate, being under duty to his mortgagee to pay taxes on the mortgaged property, cannot defeat the mortgage by any form of a lien growing out of taxes which he has suffered to become delinquent; nor will his grantee be permitted to accomplish a like result by means of delinquent taxes, or a lien for the same, existing at the time the property was conveyed to him.

2. ——— *Lien for Taxes in Ejectment—Effect of Redemption from Sale.*   Where a mortgagor, having executed a mortgage prior to the enactment of the redemption law of 1893, permits the mortgaged premises to go to tax sale and deed, and where the tax deed is held invalid, as a muniment of title, in an action brought in ejectment under such deed, but the taxes paid thereunder are adjudged to be a lien on the premises and the same ordered to be sold to satisfy such lien, and where the grantee of such mortgagor redeems from such sale as provided in section 23 of the redemption law (Gen. Stat. 1901, § 4949), *held*, that by such redemption such real estate is not freed from the lien of the mortgage; and *held, further*, that, if said section 23 should be applied literally to such a case, the effect would be to impair the obligation of contracts, and, hence, in so far would be unconstitutional and void. Whether section 23 would apply to any case in favor of a mortgagor or his grantee, so as to cut off the lien of a mortgage where a mortgagor had permitted a lien for taxes to accrue, is not decided.

Error from Cowley district court; WILLIAM T. Mc-
BRIDE, judge. Opinion filed January 10, 1903. Af-
firmed.

### STATEMENT.

ONE Soranus L. Brettun died in April, 1881, leav-
ing a will, by which he bequeathed to his wife, Mar-
garet Brettun, a life-estate in all of his property, and
to his grandchildren, Charles C. Black, Brettun Crap-
ster, and Caroline Louise Crapster, a life-estate in the
remainder, with certain exceptions as against Charles
C. Black, and with fee over to the issue of Brettun
Crapster and Caroline Louise Crapster, now Bangs.
The widow, Margaret Brettun, and Black were ap-
pointed executors of the will. Needing money for the
payment of debts of the estate, they were author-
ized by the probate court of Cowley county to mort-
gage certain real estate in the city of Winfield. They,
as executors, executed a mortgage to the Jarvis-Conk-
lin Mortgage Trust Company to secure a note, due in
three years, for the sum of $5000. This note was
transferred and assigned to the plaintiff in error, John
M. Shrigley. It has been renewed twice since that
time, the last time on July 2, 1888, for the sum of
$7000. At this time the mortgage was signed by
Black and Margaret Brettun, as executors, and by
Brettun Crapster and wife, and Caroline L. Bangs and
husband, and contained general covenants of warranty
of title in the mortgagors. Upon this mortgage and
the notes secured by it, an action in foreclosure was
brought by Shrigley in 1894.

At a tax sale in 1893, the taxes for 1892 on the mort-
gaged property not having been paid, the same was
sold, at which sale the Jarvis-Conklin Mortgage Trust
Company was the purchaser. The purchaser trans-

ferred the certificates to Shrigley, and he to the North American Trust Company, which company, after payment of the taxes of 1893, 1894, and 1895, procured the issuance of a tax deed to it for the mortgaged property. In 1897 the trust company instituted an action in the United States circuit court for the district of Kansas in ejectment, making all of the above-named grandchildren (the widow, Margaret Brettun, having theretofore died) and the minor defendants herein, to wit, Anna Louise Crapster, Bretta Viola Crapster, the children of Brettun Crapster, and Milton A. Bangs, Margaret Bangs, Ruth Bangs, and Phillis Bangs, children of Caroline L. Bangs, they being the owners of the fee to the mortgaged property, defendants therein. Shrigley was not made a party to this action. In this ejectment action, the tax deed was set aside, being decreed to be valueless as a muniment of title. The amount of taxes for which plaintiff therein was held to have a first lien was ascertained, and a sale decreed to satisfy the same. This sale was had and the property purchased by the plaintiff trust company, and a certificate of sale issued under the provisions of the redemption law of 1893. No redemption was had until a day or two prior to the expiration of eighteen months from the date of the sale, when the above-named minors, through their guardian, redeemed the same, paying into court for that purpose the full amount of the lien. These minors had, prior to this, received quitclaim deeds to the property from all of the life-estate holders, so that they were at that time the owners of the entire estate therein, except as encumbered by the liens heretofore noted.

Shrigley's action to foreclose the mortgage, commenced in 1894, was pending during all of this time

in the district court of Cowley county, and, after the redemption from the sale under the tax lien by the minors, the guardian filed his supplemental answer setting up all the proceedings in the United States court, and claimed that thereby under the provisions of section 23 of the redemption act of 1893 (Gen. Stat. 1901; § 4949), Shrigley's mortgage was defeated and the real estate wholly freed from its lien. Upon this contention the trial court held against the minors and adjudged a foreclosure of the mortgage on the interests of Brettun Crapster and Mrs. Bangs, which it decided to be a life-estate. It further held that Black had no interest in the property, by reason of his having received advancement to the full amount of his interest in the estate under the will. From this order and decree, the minors bring error to this court.

At the same time, it was contended by Shrigley that, under the peculiar terms and phraseology of the will, Margaret Brettun, the widow, took not a life-estate but a fee-simple title, or, at least, a life-estate with a power of disposal; in other words, that her mortgage, coupled with covenants of warranty, conveyed to the mortgagee, Shrigley, not merely the life-estate belonging to her and to the grandchildren of Soranus Brettun, but the fee therein, and that he was entitled to a foreclosure not only of the life-estate, which the court gave him, but of the fee. Upon this contention the trial court held against him, and he is now here asking a reversal of that order.

*H. M. Beardsley, J. E. Torrance,* and *A. M. Jackson,* for John M. Shrigley.

*Hackney & Lafferty, G. H. Buckman,* and *W. P. Hackney,* guardian *ad litem,* for the other parties to the proceedings.

The opinion of the court was delivered by

CUNNINGHAM, J. : It will be seen from the above statement of facts that the first question presented for our consideration relates to the effect of the redemption by the minors owning the entire estate of the mortgaged property from the sale by virtue of the tax lien, under the decree of the United States circuit court for the district of Kansas, and of the construction which must be given to section 23 of the redemption act, under the facts of this case. That section (Gen. Stat. 1901, § 4949) reads as follows :

"Real estate once sold upon order of sale, special execution or general execution shall not again be liable for sale for any balance due upon the judgment or decree under which the same is sold, or any judgment or lien inferior thereto, and under which the holder of such lien had a right to redeem within the fifteen months hereinbefore provided for."

It is contended that the mortgage lien of Shrigley was inferior to the lien decreed for taxes, and that Shrigley, as the holder of the inferior lien, had a right to redeem within fifteen months ; hence, his lien is wholly cut off by the redemption made by the minors. A literal construction of the terms of this section leads to this conclusion. We are met, however, with the reply from Shrigley that this section has no application so far as his mortgage is concerned, it having been executed prior to the passage of the act, and the claimed superior lien being for taxes which the law required the owners of the land to pay. It will not be contradicted that the makers of a mortgage cannot defeat the lien created thereby by the purchase of the premises at tax sale for taxes which they should have paid. We hold that the same rule applies to the grantees of such makers, and that the rights of the

grantee in this respect cannot rise higher than those of the grantor ; that the grantee takes such grant subject to the same conditions, obligations and disabilities in this respect as those resting upon the grantor. In Jones on Mortgages, 5th edition, section 680, it is said :

"A mortgagor cannot, by acquiring a tax title upon the land, defeat the lien of the mortgagee. It is his duty to pay the taxes, and he is not allowed to acquire a title through his own default. The same obligation rests upon one who has purchased the land of the mortgagor."

In *MacEwen v. Beard*, 58 Minn. 176, 178, 59 N. W. 942, it was held :

"In this case, Beard, the mortgagor, was disabled to acquire a tax title that would defeat the mortgage. He could not put his grantee in any better position than he occupied himself. With respect to the mortgage as a lien on the property, the grantee stood in just the position that the grantor had occupied."

To the same effect, see *Manuel C. Jordan v. Henry D. Sayer et al.*, 29 Fla. 100, 10 South. 823 ; *Porter v. Lafferty*, 33 Iowa, 254 ; *Stears v. Hollenbeck*, 38 id. 550 ; *Fair v. Brown*, 40 id. 209 ; *Fallass, Administrator, v. Pierce and others*, 30 Wis. 443, 481.

This view of the law makes it clear that, had the minors in this action purchased at a tax sale made to enforce the tax lien prior to the passage of the act of 1893, such purchase would have amounted only to a payment of the taxes and an extinguishment of the lien ; in other words, it would have been equivalent to the payment by the owners of the taxes. Now, if we shall hold that the owners obtained greater rights by a sale and redemption under the provisions of section 23, then it would necessarily follow that the mortgagee had lesser rights—that he had lost some-

thing of value, and that the act operated to impair to some extent the obligation of the contract existing at the time of its passage. To that extent, and in such a case, we must hold that section 23 is unconstitutional, inoperative, and void, and that the owners—the minor plaintiffs in error here—would take nothing thereby.

It may be doubted whether this redemption law would apply to a case of this kind, even if it affected only contracts made since its enactment, and whether the legislature, without anywise referring thereto, intended to make such an inroad upon the provisions of our tax law, and the principles with which it is buttressed by the holdings of the courts, as section 23 would if construed as plaintiffs in error suggest. To do so would be to permit the owner of mortgaged property, by allowing taxes which he ought to pay to become delinquent, and the property to go to sale and deed therefor, utterly to cut off his own mortgage by redeeming from a sale for the lien of taxes which he himself ought to have paid in the first instance. If he could not accomplish such a result directly, how could he indirectly by pursuing the method indicated in section 23 ? We are of the opinion that the court did not err in holding against the contention of the minor defendants.

The question presented by Shrigley is an interesting one. In many respects his argument is plausible. He presented the same question when this case was here before and the court held without discussion :

"The plaintiffs have a theory of construction of the will of Soranus Brettun under which they maintain that the land was devised to Margaret Brettun, and therefore that she, and afterward her heirs, owned it, even if she had no other source of title. The theory

Shrigley v. Black.

is not sound." ( *Prest v. Black*, 63 Kan. 682, 686, 66 Pac. 1017.)

The question decided was material in the case. We see no adequate reason for changing our views upon the proper construction of the will as there announced, and no good to result from an elaborate discussion of its provisions.

Upon both questions, the judgment of the district court will be affirmed.

JOHNSTON, GREENE, BURCH, JJ., concurring.

POLLOCK, J., not sitting, having been of counsel in the court below.

DOSTER, C. J. (dissenting) : It is admitted by my associates that section 23 of the redemption law (Gen. Stat. 1901, § 4949), if given effect, is in express terms applicable to this case and determinative of it. The refusal to apply this section is justified upon two grounds : (1) Because it was the duty of the minor children owning the remainder of the estate in fee, after the life-estates of their parents, to pay the taxes assessed against the property, they, the children, having taken the title to such life-estates, and in consequence of their failure to do so, their redemption in fact from the North American Trust Company, based upon the foreclosure of the tax lien in the federal court, operated only as a payment of the taxes and not as a redemption in law from the sale ; (2) the mortgage in question having been made before the passage of the redemption law, to give such law effect would be to impair the obligation of the contract created by the mortgage, and, hence, the statute, as applied to the present case, is unconstitutional and void. It must follow as a necessary conclusion that, if the above-stated premises upon which the opinion is based,

or either of them, are sound, the judgment of the majority is right.   If both such premises are false, the decision is wrong.

Is it true, however, as premised in the opinion, that the minor children were under an obligation or duty to pay the taxes?   The term "duty" in this connection must be given that signification which the authorities give it.

"In reference to the payment of taxes the terms duty and obligation are used in two senses, the first being in reference to the sovereign imposing the tax, the second being in reference to individuals.   The matter of duty to the sovereign is fixed by the legislative enactment imposing the tax.   The matter of obligation to individuals arises from the legal or equitable relation of the parties.   In neither case is the measure of the obligation fixed by the mere fact of an interest or estate in the land."   (*Spratt v. Price*, 18 Fla. 289, 305.)

In *Blackwood v. Van Vliet*, 30 Mich. 121, 123, Judge Cooley said:

"To preclude any person from making and relying upon a purchase of lands at tax sale, there must be something in the circumstances of the case which imposes upon him a duty to the state to pay the tax, or something which renders it inequitable, as between himself and the holder of the existing title, that he should make the purchase.   .   .   .   While a party is not to build up a title by his own neglect of duty, yet if he can show he owes no duty in the premises, he is as free to become a purchaser at a tax sale as any other person."

In *Coxe v. Gibson and Hathaway*, 27 Pa. St. 160, 67 Am. Dec. 454, it was said:

"There is nothing in reason or law to prevent an individual who holds a defective title from purchasing a better one at a tax sale.   Where the party stands in no relation of trust to the owner, and is implicated in

no fraud against him, his measures to perfect his title by a purchase at a sale for taxes will not inure to the benefit of the owner."

In the opinion in *Spratt v. Price*, supra, it was said:

"As to Spratt, in whom the legal title vested by his purchase, Price was a stranger, occupying no fiduciary relation, and entirely competent to purchase his (Spratt's) interest and estate in the land at tax sale. That every man who claims an estate in the land has a claim or right against every other person making a claim by which his adversary claimant is bound to pay the taxes is not the law."

Chief Justice Horton, in delivering the opinion in the case of *Waterson v. Devoe*, 18 Kan. 223, 232, said:

"This involves two inquiries—First, was there any obligation on the part of Waterson to pay the taxes? and second, was there such a relation of trust or confidence existing between Waterson, the mortgagee, and Devoe, the mortgagor, as to preclude the former from becoming a purchaser of a tax title on the mortgaged premises in his own behalf? It is settled, that a party under obligation to pay taxes cannot acquire a title at a tax sale."

In the opinion in *Sands v. Davis*, 40 Mich. 14, Chief Justice Campbell said:

"Whatever may have been Filer's disability to purchase a tax title that was the result of his own default, it is difficult to see how Sands can be made subject to any such disability. When he purchased, the tax title for 1863 and the tax sale for 1864 were both already in existence as adverse interests, which, if valid at all, would destroy all the other titles, and would make his own purchase from Filer unavailable. Having no further relations with Filer, and no duties to perform towards him, there is no rule of law which would make it illegal or unconscionable to buy in any adverse title which he could find."

It is, we think, evident from the above quotations

that the bare fact of the ownership of land does not impose, of necessity, as to other individuals, the obligation to pay the taxes on it. Therefore, in this case, the obligation of the minors, if any, to pay the taxes must have arisen from, and be based upon, either their relation to the property or the mortgage in question. What was that relation? Under the will of their ancestor, Soranus L. Brettun, they took the remainder after the life-estate of their parents was carved therefrom. This life-estate was by their parents mortgaged to Shrigley. They were neither parties to that mortgage nor was their estate in remainder in any way affected or bound by it. Did such relation impose upon them any duty of paying the taxes assessed against the property? Clearly not. As they occupied no contract relation to the mortgage, they owed the mortgagee no duty upon the contract, and, therefore, if any duty rested upon them, it was in respect to the property mortgaged. The question then arises, Were they, as owners of the remainder, under obligation to pay the taxes? Not only this court, but all courts wherever the question has arisen, have determined that the life-tenants in possession, and not the parties entitled to the remainder, are obligated to pay the taxes.

In the case of *Menger v. Carruthers*, 57 Kan. 425, 46 Pac. 712, this court held:

"Whether the legal title to the life-estate passed to the defendant by virtue of the covenant of warranty, or merely inured to his benefit by way of equitable estoppel, is unimportant in this case, and that, under either view, the defendant could not acquire a title as against the owners of the fee, either by adverse possession or under a sale for taxes which accrued during the continuance of the life-estate."

In the opinion Mr. Justice Allen said:

"The lot was taxable. The title had passed out of the United States. Menger was in possession of it. Whether he held the legal title or not, no one had such a title that he could successfully disturb him. He enjoyed the benefit of the life-estate without molestation during the full term. No one else was under the slightest obligation to pay the taxes while he enjoyed the rents and profits, and clearly he could not obtain a valid tax title based on his own failure to pay taxes justly chargeable to him alone."

In *Defreese v. Lake*, 109 Mich. 415, 67 N. W. 505, 32 L. R. A. 744, 63 Am. St. Rep. 584, it was said:

"It is a general proposition that a life-tenant to whom taxes are assessed, and upon whom the law imposes the burden of such taxes, cannot acquire the title in fee by allowing the premises to be sold for taxes, and bidding them in, thus cutting off the remainder-man."

In that case Betsey Casler was the owner of the life-estate. In the opinion it was said:

"These taxes were properly assessed to Betsey Casler, who owed the duty of payment, both to the state and to the remainder-men. (*Jenks v. Horton*, 96 Mich. 13, 55 N. W. 372; *Smith v. Blindbury*, 66 Mich. 319, 33 N. W. 391.) But Henry Casler was in a different situation. He certainly owed no duty of payment to the state, though his interest in the premises was liable to sale therefor."

"The life-tenant in a homestead estate neglected and refused to pay taxes or make repairs thereon for many years, and to save the estate from entire loss to the reversioners the taxes were paid by the administrator with the will annexed, having the power so to do by the express terms of the will. *Held*, that such administrator might proceed in equity to have a receiver appointed to take charge of the premises, collect the income or rentals of the property, and apply

the proceeds to pay the taxes and necessary expense of repairs, and reimburse the administrator for such taxes and expenses so paid, and also pay from such income any unpaid taxes or necessary expense for repairs necessarily made to save the property ; and that, if such rental is insufficient, the receiver may, under authority and direction of the trial court, proceed to sell the life-estate of the defendant in the premises, or so much thereof as may be sufficient for such purpose." (*St. Paul Trust Co. v. Mintzer*, 65 Minn. 124, 67 N. W. 657, 32 L. R. A. 756, 60 Am. St. Rep. 444.)

Upon the proposition that it is the duty of the owners of the life-estate to pay the taxes assessed against the property, and their sole duty, and that it is not the duty of the remainder-men or reversioners, the authorities are so numerous and so fully in accord that the question is not open to controversy. (*Pike v. Wassell*, 94 U. S. 711, 24 L. Ed. 307 ; *Hagan et al. v. Varney et al.*, 147 Ill. 281, 35 N. E. 219 ; *Clark et al. v. Middlesworth et al.*, 82 Ind. 240 ; *Olleman v. Kelgore*, 52 Iowa, 38, 2 N. W. 612 ; *Plympton v. Boston Dispensary*, 106 Mass. 544; *Bone v. Tyrrell*, 113 Mo. 175, 20 S. W. 796 ; *Disher v. Disher*, 45 Neb. 100, 63 N. W. 368 ; *Pierce v. Burroughs*, 58 N. H. 302.)

It must, therefore, be conceded that, as owners of a remainder not in possession, they were under no obligation to pay the taxes assessed.

It is, however, further premised that, as the minors received from their parents quitclaim deeds to the life-interests mortgaged, they thus came under obligation to pay the taxes, and thereby to protect the mortgage security for the benefit of the mortgagee. Is this position sound? It must be remembered that the time when the life-estates of the parents were conveyed to the children was after the tax lien had been foreclosed in the federal court, after the sale based

15—66 KAN.

upon the decree made to the trust company, a stranger to the title, after the mortgagee had permitted his fifteen months' time to redeem under the statute to expire, and just prior to the redemption by the minors. Does the fact that the minors received a conveyance to the life-estates at such time, when the interests of the mortgagee were entirely cut off and destroyed, preclude them from making such redemption as would inure to their benefit under the statute? This question has many times received the consideration of the courts and in every instance has been determined against the contention of the mortgagee. In *Oswold v. Wolf*, 129 Ill. 200, 21 N. E. 839, it was held:

"When the landowner holds by a title acquired subsequent to the levy of the tax, and has not assumed its payment, or in any way become liable to see it paid, the reason of the rule which disqualifies one whose legal duty it is to pay the taxes from acquiring a tax title, manifestly does not exist."

In the opinion it was said:

"The reason why an owner of land is disqualified to purchase it at tax sale is, that permitting him to become such purchaser would enable him to take advantage of and reap a benefit from his own neglect of a legal duty. But where the owner holds by a title acquired subsequent to the levy of the tax, and has not assumed its payment or in any way become liable to see it paid, that reason manifestly does not exist. There no legal or moral duty is neglected by failing to pay the tax. The doctrine is well stated in the opinion of Dixon, C. J., in *Smith v. Lewis*, 20 Wis. 350, as follows:

"'It will be found, on examination of the adjudicated cases, that the turning-point in all of them was the obligation of the party setting up the title to pay the taxes. If he was under such obligation, either from having been in possession and liable to pay taxes at the time of the assessment, or from their having

been properly assessed against him, or by reason of any covenant or promise to the party against whom he claimed the title, the deed in such cases has been held unavailing.   It is void because it was obtained in violation of the duty of the person claiming title under it.   But the mere purchase of the premises from the mortgagor or owner after the assessment and sale and before redemption, or possession of them at the expiration of the time for redeeming, imposes no obligation to pay or redeem.' "

In *Burgett v. Williford*, 56 Ark. 192, 19 S. W. 750, 35 Am. St. Rep. 96, it was said:

"It is also objected that as Mrs. Elizabeth G. Burgett had a deed for and claimed an undivided interest of one-half in the land at the time of the tax sale, she, as tenant in common with the owner of the other half, was obliged to pay the taxes, and could not suffer the land to sell for taxes, and purchase her cotenant's interest, and thereby get a title to it.   It is very true she could not against her cotenant.   But there is no reason why she could not thus acquire title as against strangers to whom she stood in no fiduciary relation. If her cotenant does not complain, a stranger, to whom she stands in no relation of trust or confidence, cannot."

In *Moss v. Shear*, 25 Cal. 38, 45, 85 Am. Dec. 94, the rule was stated as follows:

"If the defendant was under any legal or moral obligation to pay the taxes, he could not, by neglecting to pay the same and allowing the land to be sold in consequence of such neglect, add to or strengthen his title by purchasing at the sale himself, or by subsequently buying from a stranger who purchased at the sale.   Otherwise, he would be allowed to gain an advantage from his own fraud or negligence in failing to pay the taxes.   This the law does not permit, either directly or indirectly.   On the contrary, if the defendant was under no legal or moral obligation to pay the taxes, there is no principle of law or equity which

precludes him from purchasing at the sale, although in possession at the time the assessment was made or when the land was sold.''

In *Bowman et al. v. Cockrill*, 6 Kan. 311, 332, this court, quoting from *Moss v. Shear*, supra, said :

''If the defendant was under no legal or moral obligation to pay the taxes, there is no principle of law or equity which precludes him from purchasing at the sale, although in possession at the time the assessment was made or when the land was sold.''

Under the laws of this state a tax lien is an independent, paramount title which cuts off and destroys all former grants and liens. (*Douglass v. Lowell*, 64 Kan. 533, 67 Pac. 1106; *McFadden v. Goff*, 32 id. 415, 4 Pac. 841; *Board of Regents v. Linscott*, 30 id. 240, 1 Pac. 81.) When the tax deed is set aside for irregularities the lien given for the taxes is an underlying and paramount one. (*Gilman v. Bank*, 64 Kan. 87, 67 Pac. 551.) In this case that paramount lien was foreclosed and a sale made to a stranger. This sale divested all prior liens, titles, and grants, unless redemption was made under the statute. Such redemption was not made by the mortgagee, and the rights of the purchaser at the sale became, as against the mortgage, fixed and absolute. After that time the minor remainder-men received a conveyance of the life-estates and then redeemed. That such redemption by the minors did not restore the lien of the mortgage cut off and destroyed by the sale and the failure of the mortgagee to redeem under the statute, cannot be doubted if the minors had the right of redemption. That the minors were not precluded from redeeming by any duty to make payment of the taxes upon which the property was sold, which constituted the lien foreclosed, has been seen. That they owed

the mortgagee no duty, but occupied a position adverse to him, is clear. Having the right to redeem under the statute from the foreclosure sale of the superior lien of the state for taxes, they became subrogated to all the rights of the purchaser at such sale. The principal of such rights was the paramount title to the entire property. Under that title they are now in possession. Upon the strength of that title they contend against the foreclosure of the discharged mortgaged lien. Will a court of equity fail to protect them, or foreclose the inferior lien against the superior title, unless it is shown that the title to which they became subrogated is for some legal reason null and void? This issue was tendered by the minors to the mortgagee in the trial court by their plea of redemption from a valid sale, and no defense was made thereto. That acquired title being superior to the mortgage, they should in all justice and equity prevail in this action. (*Doe ex dem. Gledney and another v. Deavors*, 8 Ga. 479 ; *Atkins v. Hinman*, 7 Ill. 437.) The statute, therefore, being directly applicable to the facts in this case, should be given effect. (*Case v. Lanyon*, 62 Kan. 69, 61 Pac. 406.)

My associates, however, declare the law to be that the giving effect to the statute would impair the validity of the mortgage contract ; hence, it is claimed, as applied to the facts in this case, the act is inoperative and void by reason of the prohibition of the federal constitution on the power of states to enact laws impairing the obligation of contracts. Why this result should follow I am at a loss to understand. The writer of the opinion cites no authorities in support of the proposition, and advances no argument save the bare fact that the mortgage was made before the passage of the redemption act.

It is a general principle of law that it is the duty of a court to uphold legislative enactments unless some infraction of the constitution, federal or state, is clearly shown. Is such showing made or attempted in this case? The obligation of a contract, as defined by the federal supreme court, is as follows:

"The obligation of the contract consists in the *power and efficacy* of the law which applies to, and enforces performance of the contracts, or the payment of an equivalent for non-performance. The obligation does not inhere, and subsist in the contract itself, *propria vigore*, but in the law applicable to the contract." (*Ogden v. Saunders*, 25 U. S. 213, 318.)

What is the legal obligation of the mortgage contract in the case at bar and upon whom does such obligation rest? It is that the owners of the life-estate, the makers of the mortgage, will pay the mortgage debt, and, in default of payment, the mortgagee has the right to the foreclosure of the mortgage upon the life-estate, and the sale thereof in satisfaction of the debt under then existing laws. The minors in this case are not parties to this contract—are not obligated by its terms. The law in force at the time the contract was made gave a lien upon the property, paramount to the mortgage lien, to any one not in duty bound to pay the taxes, who should purchase the property at a sale for taxes. Such a sale was made and a valid tax lien was thus created. This underlying lien was foreclosed, and, in pursuance to the decree rendered, a sale was made to a stranger to the title. At the time the mortgage contract was made, under the then existing laws such a sale and deed, made in pursuance thereof, absolutely and forever cut off the rights of the mortgagee in the property. Not so the law of which complaint is made in this case. This redemption law grants to the mortgagee larger rights than he formerly possessed. The

former law made such a sale absolute. This law makes the sale not absolute, but conditional, giving to the mortgagee a right to redeem—something he did not beforetime have. It is fundamental law that a statute enlarging contract rights is not unconstitutional, because the enlargement of such right is not an impairment of the obligation of the contract, and is not injurious, and complaint thereof cannot be made. That a statute granting a right of redemption from a sale under the mortgage of the life-estate to the life-tenant, or others, where no such right of redemption existed when the mortgage contract was made, is unconstitutional and void, is conceded, but such is not this case. The matter under consideration here is not the right of redemption from a sale under the mortgage. That a grant of larger rights to the mortgagee to redeem from a sale under a lien superior to his mortgage than existed when the mortgage contract was made is unconstitutional, as declared in this case, is without authority or reason in its support.

In their defense to the foreclosure in this case the minors do not rely at all upon the title to the life-estate received from their parents. That they could not do. The minors insist that they occupied no relation to the property or the mortgage contract which precluded them from purchasing the life-estate at a sale for taxes, the law casting upon the owners of the life-estate, as it did, the duty of making payment of such taxes. As the minors were neither obligated by the law to make payment of the taxes nor otherwise to protect the mortgagee in his security of the life-estate by their redemption from the foreclosure sale of the tax lien, which sale had theretofore cut off and forever destroyed the mortgage lien, they, hence, became subrogated to the rights of such purchaser, which preserved to them

the estate free and discharged from the mortgage debt. It is true that taxes are not assessed against the various interests that may be owned in land. They are not apportioned between the owners of dominant and servient estates. They are imposed upon the land, irrespective of the character of legal interests that may be owned in it, but in the case of a division of interests into life-estate and remainder it is the duty of the owner of the former to pay the taxes. The right of a mortgagee of a life-estate can be no greater than that of his mortgagor; and, hence, if there can be said to be a duty at all, as between the mortgagee of the life-estate and the owner of the remainder, in respect to the payment of taxes, that duty rested on the former and not on the latter. It is true that if the owner of a life-estate or others in interest with him do not pay the taxes, it is advisable for the remainder-man to make payment; but that is a matter of self-protection to himself and not of duty to others. The decision of our associates, however, actually converts a mere matter of business prudence and caution, personal to the one performing it, into a legal obligation to another.

SMITH, J. : I concur in this dissent.