EAVES v. MULLEN.

No. 933.   Opinion Filed March 2, 1910.

(107 Pac. 433.)

1.  COURTS—Jurisdiction — County Court—Guardianship Proceedings—Transfer from Ind. Ter. Court. A guardianship proceeding pending in one of the United States courts of the Indian Territory at the time of admission of the state was, by section 19 of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 277) and section 23 of the Schedule of the Constitution, transferred to the county court of the county in which was located the court in which the case was pending.

2.  SAME—Effect of Subsequent Statute. A county court to which had been transferred a guardianship proceeding that would have been properly triable in the court of another county, if it had been instituted since the admission of the state, was not by

reason of the act of the Legislature approved March 12, 1908 (Sess. Laws 1907-08, p. 212). ousted of jurisdiction of said cause, where no application for a transfer thereof was ever made by any of the parties having a substantial interest therein.

3.    GUARDIAN AND WARD—Application for Sale of Land—Service of Order. Service of an order of the court granting a hearing upon the application of a guardian for an order of sale of his ward's real estate must, by reason of section 1846 Wilson's Rev. & Ann. St. 1903, be had by one of the following methods: First, by personal service of a copy of the order on the next of kin of the ward and all persons interested in the estate at least 14 days before the hearing of the petition; second, by publication of a copy of such order at least 3 weeks in a newspaper printed in the county, or, if there be none printed in the county, then in such newspaper as may be specified by the court or judge in the order.

4.    SAME—Sufficiency of Service. The court cannot by order require service by both methods, or service by publication for a longer time than that prescribed by the statute.

5.    GUARDIAN AND WARD—Sale of Land — Filing of Petition—Venue. A petition of a guardian for an order of sale of his ward's real estate must be filed in the county court of the county in which he was appointed guardian; but the petition is not required to show affirmatively that the ward resides in the county where it is filed, in order, to give the court jurisdiction.

6.    GUARDIAN AND WARD—Sale of Lands — Collateral Attack—Decree Confirming Sale—Sufficiency of Notice. A decree confirming a sale at public auction by the guardian of his ward's real estate, made upon a hearing of the return, brought on before the first day of the next term of the county court after such sale, is not rendered void on collateral attack, because notice of such hearing was given only 9 days, instead of 10, as directed by order of the court fixing the date of such hearing, and as provided by sections 1852 and 1667, Wilson's Rev. & Ann. St. Okla. 1903.

(Syllabus by the Court.)

*Error from District Court, Carter County; S. H. Russell, Judge.*

Action by J. S. Mullen against J. J. Eaves. Judgment for plaintiff. Defendant brings error. Affirmed.

This is an action of ejectment brought by defendant in error in the district court of Carter county to recover the possession of a certain tract of land situated in said county. In his petition in that court defendant in error, hereinafter called plaintiff, alleges

that he has a legal estate in fee simple and an equitable estate in and to a certain tract of land which he describes, and that he is entitled to the immediate possession thereof. He alleges that plaintiff in error, hereinafter called defendant, has unlawfully kept him out of possession of same since January, 1909, and prays for judgment for possession thereof and for damages in the sum of $100. Defendant, by his answer, attempts to allege specifically the facts pertaining to the manner in which plaintiff acquired his alleged title to the land, which alleged facts are briefly as follows: Emily Holding, a full-bood Chickasaw Indian, died in the year 1904, after having had allotted to her the lands in controversy. She left surviving her as her heirs at law her mother, Suchy Holding, her father, Amos Holding, and five brothers and sisters, namely, James, Annie, and Armon Holding, minors, and Andrew L. Brown and Lydia Colbert, adults. One F. A. Bonner was appointed guardian for the three minors in the United States Court for the Southern District of the Indian Territory, at Ardmore, prior to the admission of the state. After the admission of the state, he filed his petition in the county court of Carter county, asking for an order of sale permitting and directing him to sell the interest of his wards in the land in controversy for the purpose of maintenance and education. The order of sale was made, the interest of the minors sold, and conveyed under order of that court. Plaintiff is the grantee of the purchaser at said sale and has also purchased the interest of the adult heirs.

The specific allegations of the answer, made by the defendant for the purpose of showing that the sale by the guardian was void, and that there is an outstanding title in said minor heirs, in substance, are: First. That the minor heirs, represented by F. A. Bonner, guardian, were at the time the petition for sale and the order thereon was made domiciled in Johnston county, Okla., and for this reason the county court of Carter county had no jurisdiction to entertain the petition for the sale of their lands. Second. That the court in making the order for hearing on the petition of guardian for sale ordered that the next of kin and per-

sons interested be notified by personal service of the time and the place of said hearing, and also ordered that a copy of the order be published for four consecutive weeks in the Ardmoreite of Ardmore; Okla. No personal service was made upon the next of kin and persons interested. The notice of hearing was published upon the 2d, 9th, 16th, and 23d days of September, 1908, making in all only 22 days, whereas, the order of court was that it should be published for four weeks. Third. That the court in ordering the sale directed that notice thereof be published in a paper published in Carter county for two consecutive weeks, and in a paper in an adjoining county for the same length of time, but that such notice was published in the Carter county paper on the 4th and 11th days of October, 1908, and in a paper in an adjoining county on the 1st and 8th days of October, 1908. Fourth. That in the order for hearing, on the return of sale the court set the 30th day of October, 1908, as the date for said hearing, and ordered that notice thereof be published in the Ardmoreite of Ardmore, Okla., for 10 days. That said notice was published only on the 21st and 30th days of October, 1908.

A demurrer to the defendant's answer was sustained, whereupon, he having refused to plead further, the court rendered a judgment in favor of the plaintiff on the pleadings.

*H. A. Ledbetter,* for plaintiff in error.—Citing: Woerner, Am. Law of Guardianship, pp. 80-82, 245; *Connell v. Moore,* 78 Pac. 164; *Allgood v. Williams,* 92 Ala. 551; *Kelsey v. Green,* 69 Conn. 291; *Beezley v. Phillips,* 117 Fed. 105; *Mulford v. Stoback,* 46 Ill. 303; *Coy v. Downie,* 14 Fla. 544; *Morden v. Purdy,* 11 Minn. 384; *Mickel v. Hicks,* 19 Kan. 578; *Groden v. Mois,* 95 Pac. 412; 21 Cyc. 136, 138, 139; *State v. Towl,* 48 Mo. 148; *Frazier v. Jenkins,* 64 Kan. 615; *Railway Co. v. Cook,* 43 Kan. 84; *Campbell v. Drais,* 57 Pac. 994; *Hellman v. Merz,* 44 Pac. 1079.

*J. V. Cabell, J. A. Bass* and *Cottingham & Bledsoe,* for defendant in error.—Citing: *Davis v. Caruthers,* 22 Okla. 323;

*Kelly v. Morrel,* 29 Fed. 736; *Calloway v. Nicholas,* 47 Tex. 331; *Whiteman v. Fisger,* 74 Ill. 152; *Benson v. Benson,* 70 Ind. 258; *Newbald v. Schlens,* 66 Md. 589; *Hamiel v. Donnelly,* 75 Iowa, 93; *Schale v. Wasey,* 70 Mich. 414; *Walker v. Goldsmith,* 14 Ore. 145; *Brazee v. Schofield,* 2 Wash. 220; *Fleming v. Johnson,* 26 Ark. 421; *Gwyn v. McCauley,* 32 Ark. 107; *Currie v. Franklin,* 51 Ark. 338; Woerner on Guardianship, sec. 87; *Montour v. Purdy,* 11 Minn. 278; *Hurt v. Long,* 16 S. W. 968; *White v. Iselin,* 5 N. W. 359; *Thaw v. Ritchie,* 136 U. S. 548; *Fitzgibbon v. Lake,* 29 Ill. 176; *Mulford v. Beneridge,* 78 Ill. 458; *Mohr v. Porter,* 51 Wis. 357; *Orman v. Boles,* 33 Pac. 110; *Kretsinger v. Brown,* 165 Fed. 612; *Hagerman v. Meeks,* 45 Pac. 69; *Conling v. La Dow,* 54 Pac. 218; *In re Hamilton Estate,* 52 Pac. 710; *Mortgage Trust Co. v. Redd,* 88 Pac. 476; *Estate of Dorsey,* 17 Pac. 209; *Scarf v. Aldrich,* 32 Pac. 324; *Gage v. Henry.* 5 Sawyer 253; *Fitch v. Miller,* 20 Cal. 381; *Mohr v. Maniere,* 101 U. S. 417; *Watson v. Tromble* (Neb.) 29 Am. St. Rep. 492; *Zillmer v. Geritchen* (Cal.) 43 Pac. 409.

HAYES, J. (after stating the facts as above). The first contention of counsel for plaintiff in error is that the county court of Carter county was without jurisdiction to entertain the petition of the guardian, F. A. Bonner, for an order of sale of his wards' interest in the land in controversy. He concedes that the United States Court for the Southern District of the Indian Territory had jurisdiction to appoint F. A. Bonner guardian of the minors. His wards then resided, and now reside, in what was formerly the Southern District of the Indian Territory. It is not contended that any change of residence has been made by any act of the wards, their guardian, or their parents, but that by the Constitution the territory formerly constituting the Southern District of the Indian Territory was divided into 10 or more counties, and that the place of residence of the minors is not within Carter county, but is within Johnston county. The statute extended in force in the state by the enabling act and the

Schedule to the Constitution provides that the county court, when it appears necessary or convenient, may appoint guardians for the persons and the estates, or both of them, of minors who have no guardian legally appointed by deed or will, and who are *inhabitants or residents* of the county. Section 1814 of Wilson's Revised & Annotated Statutes of 1903 of Oklahoma. Similar statutes conferring jurisdiction to appoint guardians exist in nearly all the states of the Union. Such statutes appear to have been uniformly held to condition the exercise of the power to appoint guardians upon the residence of the minors within the county over which the territorial jurisdiction of the court extends, and the appointment of a guardian by the court of a county of which the minor is not a resident is void, and may be so treated in a collateral proceeding. Woerner, Am. Law of Guardianship, p. 80. But the question here presented is not one of jurisdiction to appoint a guardian, but is: "What became the status of the guardianship proceeding of F. A. Bonner upon admission of the state into the Union?" This proceeding had been instituted in a court having jurisdiction to entertain same, and was there pending when the state was admitted. When Congress came to provide for the admission of Indian Territory and Oklahoma Territory as one state, it undertook, as has been the general custom of that body since the admission of Florida as a state, to provide for the disposition of those cases pending in the territorial courts at the time the state would be admitted. Section 19 of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 277) provides:

"That the courts of original jurisdiction of such state shall be deemed to be the successor of all courts of original jurisdiction of said territories, and as such, shall take and retain custody of all records, dockets, journals, and files of such courts, except in causes transferred therefrom as herein provided. *   *   *"

Section 3 of an act of Congress approved March 4, 1907, generally known as the "Amendment to the Enabling Act" (34 Stat. 1286, c. 2911), provides that:

"All causes, proceedings and matters, civil or criminal, pending in the district courts of Oklahoma Territory, or in the United States courts of Indian Territory, at the time said territories become a state, not transferred to the United States Circuit or District Courts in the state of Oklahoma, shall be proceeded with, held, and determined by the courts of said state, the successors of said district courts of the territory of Oklahoma and the United States Courts in the Indian Territory.   *   *   *"

Other sections of the enabling act and of the amendment thereto provide for the removal of all cases of a federal character to the United States Circuit and the District Courts established in the state, but no provision was made for the removal of probate causes to said courts, and it was evidently intended that such cases pending at the time of the admission of the state should be received by the courts of the state for final disposition. But the question arises as to whether it was intended by the foregoing sections of the enabling act and of the amendment thereto to designate a particular court of original jurisdiction into which each cause pending in the courts of the territories should pass and be finally determined.

We think that no such meaning can be attributed to these sections. Congress, at the time of the enactment of the enabling act, did not know, and could not anticipate, what courts of original jurisdiction would be established within the state. At the time two different judicial systems existed within the territory to be embraced within the proposed state. Congress did not, and could not, know which of these systems, or whether either of them, would be adopted and continued by the Constitution, and, in fact, neither of said systems was adopted or continued by the Constitution, but a system different from either of the systems theretofore obtaining has been established. It could not be foretold whether the framers of the Constitution of the proposed state would make the jurisdiction of the courts having original probate jurisdiction in guardianship proceedings depend upon the residence of the minor or upon the location of his estate. These provisions of the enabling act were not self-enforcing. Subse-

quent legislation either by way of constitutional provision or acts of the legislative body of the state was necessary to carry these provisions into effect. In *Benner et al. v. Porter,* 9 How. 235, 13 L. Ed. 119, the court said:

"On the admission of a territorial government into the Union as a state, the concurrence of both the federal and state governments would seem to be required in the transfer of the records in cases of appropriate state jurisdiction from the old to the new government. An act of Congress would be incapable of passing them under the state jurisdiction, as would be an act of the Legislature of the state to take the records out of the custody of the federal government. Both should concur."

Speaking further upon this question, the court said:

"We have said that the assent of Congress was essential to the authorized transfer of the records of the territorial courts, in suits pending at the time of the change of government, to the custody of state tribunals. It is proper to add, to avoid misconstruction, that we do not mean thereby to imply or express any opinion on the question whether or not, without such assent, the state judicatures would acquire jurisdiction. That is altogether a different question. And, besides, the acts of Congress that have been passed, in several instances, on the admission of a state, providing for the transfer of the federal causes to the District Court, as in the case of the admission of Florida, already referred to, and saying nothing at the time in respect to those belonging to state authority, may very well imply an assent to the transfer of them by the state to the appropriate tribunal. Even the omission on the part of Congress to interfere at all in the matter may be subject to a like implication. And a subsequent assent would doubtless operate upon past acts of transfer by the state authority."

We think that it was the intention of Congress by the provisions of the enabling act, quoted *supra,* to give its assent to the passing of the cases appropriate for state jurisdiction pending in the territorial courts of original jurisdiction into the state courts of original jurisdiction, and to consent to the transfer of the papers and records in such causes to said courts, as the successors of the territorial courts, and, since the enabling act required the

Constitutional Convention acting as legislative agents of the people of the proposed state to accept its terms by an irrevocable ordinance, it was incumbent upon the Constitutional Convention and the state Legislature to provide for the reception of these cases into the courts of the state and for their final disposition. But we do not think that Congress, in consenting to the transfer of such cases and the records and papers therein, and in directing that the same should be received into the state courts and finally disposed of, intended to limit the legislative power of the state to provide for the reception and disposition of said cause further than that those pending in the courts of original jurisdiction of the two territories should come into the state courts of original jurisdiction as the successors of said territorial courts.

This seems to have been the construction placed upon these provisions by the framers of the Constitution and by the first Legislature of the state, as evidenced by the provisions contained in the Constitution and by certain acts of the Legislature which shall hereafter be referred to. While such construction by those legislative bodies is not controlling upon this court, it is not without persuasive influence. Section 27 of the Schedule of the Constitution (page 389, Snyder's Const.) provides:

"All cases, civil and criminal, pending, at the time of the admission of the State into the Union, in the district courts of the territory of Oklahoma, in any county within the district, and the records, papers, and proceedings of said district court, and the seal and other property appertaining thereto, shall be transferred into the district court of the state for such county, except as is provided in the enabling act of Congress, and all cases, civil and criminal, pending at the time of the admission of the state, into the Union, in the United States Courts, for the Indian Territory, within the limits of any county created in whole or in part, within the limits of what was heretofore the Indian Territory, and all records, papers, and proceedings of said United States Courts for the Indian Territory, and the seal and other property appertaining thereto, shall be transferred to the district court of the state for such county, except as is provided in the enabling act of Congress and the amendments thereto: Provided,

that the Legislature may provide for the transfer of any such cases from one county to another county."

Section 23 of the Schedule (page 387) provides:

"When this Constitution shall go into effect, the books, records, papers, and proceedings of the probate court in each county, and all causes and matters of administration and guardianship, and other matters pending therein, shall be transferred to the county court of such county, except of Day county, which shall be transferred to the county court of Ellis county, and the county courts of the respective counties shall proceed to final decree of judgment, order, or other termination in the said several matters and causes as the said probate court might have done if this Constitution had not been adopted. The district court of any county, the successor of the United States Court for the Indian Territory, in each of the counties formed in whole or in part in the Indian Territory, shall transfer to the county court of such county all matters, proceedings, records, books, papers, and documents appertaining to all causes or proceedings relating to estates: Provided that the Legislature may provide for the transfer of any of said matters and causes to another county than herein prescribed."

By section 12 of article 7 of the Constitution original jurisdiction in all probate matters is conferred upon the county courts. As in probate matters, the county courts of the state correspond in original jurisdiction thereof to the United States Courts of the Indian Territory and to the probate courts of Oklahoma Territory, they became, as to all probate matters, as a class of courts established in the state, the successor of said territorial courts, and specific provisions were made by section 23 of the Schedule for the reception by the county courts of the probate cases pending at the time of the admission of the state and for their final disposition. It was the duty of the district court of any county of the state carved out of Indian Territory to cause by proper order all matters, proceedings, records, and books pertaining to all original causes or proceedings relating to estates that come to it from any United States Court of the Indian Territory to be transferred to the county court of such county. *Davis v. Caruthers*, 22 Okla. 323, 97 Pac. 581.

Indian Territory was divided into four judicial districts, each of which embraced a large area, and each of which was by the Constitution divided into several counties. In each of these counties a district court and a county court were established. In each judicial district of the Indian Territory there existed one United States Court, which held its terms at different places in the district. At any of the different places where court was held in the district guardians could be appointed, and were appointed for minors residing within the district. One of such places of holding court in the Southern District was at Ardmore, now the county seat of Carter county. The guardianship proceedings of F. A. Bonner were pending in the United States court at that place at the time of the admission of the state and were therefore under section 23 of the Schedule properly transferred to the county court of Carter county. Owing to the fact that at the time of the admission of the state all lands in the Indian Territory part of the state, title to which had passed from the government to individual owners, except townsites, were owned by the members of the Five Civilized Tribes of Indians, or by those to whom the members had conveyed their allotments, or a part thereof, and owing to the further fact that the minors of said tribes shared equally with the adults in the division of the tribal lands, a great portion of the lands of that part of the state was then and is now owned by minors, by reason of which there then existed and now exists in that part of the state a great volume of probate business. An appointment of a guardian for minors residing in any of the judicial districts of Indian Territory could be made at any place at which court was held in such district. Application was not always made to the court at the place in the district nearest the residence of the minor. The selection of a place at which application was made to the court for an appointment of a guardian was often determined by the location of the ward's estate, and the proximity thereto of a suitable and satisfactory person to act as guardian. As a result of this practice,

when the districts were divided into counties by the Constitutional Convention, it resulted in many cases, as in the case at bar, that the residence of the ward fell in a county different from that in which the court at which the appointment of a guardian had been made, and different from the county of the guardian's residence and of the location of the ward's estate. To have provided arbitrarily that all guardianship proceedings pending upon the admission of the state should be transferred to the county court of the county that would have had jurisdiction, if the proceeding had been begun since the admission of the state, would, in many instances, as in the case at bar, have resulted in transferring such proceedings to the county of which the guardian was not a resident, and different from that in which the estate of the ward was located, both of which facts would have contributed to the inconvenience. and difficulty of the guardian continuing to serve, and in many cases would have rendered his resignation necessary and would have entailed upon the estate of the ward the expense of closing up his guardianship and the institution of a new guardianship proceeding. On the other hand, had no provision been made authorizing the Legislature to provide for the transfer of such causes to other counties than those designated by section 23 of the Schedule, some of the proceedings thus transferred by the Schedule would have been required to have been continued and determined in a county where neither the ward nor the guardian resided, and in which no part of the estate was located. A flexible rule was therefore provided by section 23 of the Schedule for the transfer of these causes, in that they were transferred directly to the county court of the county in which they were pending at the time of the admission of the state, with authority vested in the Legislature to provide by subsequent legislative enactments for the transfer of any of such cases for their final disposition to those counties where they could be proceeded with, with the least inconvenience and hardship to the ward and guardian and expense to the estate.

Section 1814, Wilson's Rev. & Ann. St., authorizing county

courts to appoint guardians only for minors who are inhabitants or residents of the county, or who reside without the state, and have estates within the county, has no application to the guardianship of F. A. Bonner, or other such proceedings pending at the time of the admission of the state. Such proceedings are controlled and the jurisdiction of the court to hear and finally determine the same is governed by the foregoing provisions of the enabling act and of the Constitution, subject to such statutory enactments pursuant thereto as may have been enacted by the Legislature. Had the application of F. A. Bonner for appointment as guardian been made subsequent to the admission of the state, then only the county court of Johnston county would have had jurisdiction to entertain same, and should his guardianship now pending in Carter county for any reason be terminated as by death, resignation, or removal, then the appointment of a new guardian would be required, and the new proceeding would in no way be controlled by the foregoing provisions of the enabling act and of the Constitution, but would have to be instituted in the county in which the minors have their domicile. *Harding v. Weld,* 128 Mass. 587.

Counsel for plaintiff in error, however, contends that the jurisdiction of the county court of Carter county over the guardianship proceedings involved in this cause had, prior to the order of sale thereon, been terminated by two certain acts of the Legislature. Section 1 of an act of the Legislature approved December 21, 1907 (Sess. Laws 1907-08, p. 205), as amended by an act of the Legislature approved March 12, 1908 (Sess. Laws 1907-08, p. 212), provides:

"That all those civil cases transferred from the courts of the territory of Oklahoma and the United States courts in the Indian Territory to the courts of this state, as transferred by acts of Congress and accepted by the Constitution which would have been properly triable in any court, or county or district of this state, had such suit or proceeding been commenced after the admission of this state into the Union, including records formerly belonging to the United States commissioners' courts and all pa-

pers of mayors of cities and incorporated towns having and exercising *ex officio* jurisdiction as United States commissioners in that part of the state formerly known as the Indian Territory, that may be in the hands of the clerks of the various district courts of that portion of the state, may, including probate matters, by any person having a substantial interest therein, on petition verified by the affidavit of the applicant or his attorneys of record, filed with the judge or clerk of the court where such cause is pending within sixty days after the passage and approval of this act, be transferred to the proper courts of such county or district, and that all books, records, pending cases, papers, proceedings, liens, judgments and executions pending in a justice of the peace court of any county are hereby transferred to some justice of the peace court of the county in which if originally brought in said court, the defenndant lives, or if the defendant be a nonresident, then to the county where the plaintiff lives, or the defendant has property, and when such records are transferred as above provided for, said court shall have full and complete jurisdiction of all cases and proceedings so transferred; provided, that all transfers of cases, papers, books, proceedings, made or attempted to be made by mayors of incorporated towns to the proper court are hereby legalized and made valid."

This statute applies to all cases transferred from United States courts of Indian Territory to any of the courts of the state. By specific provisions, it includes probate causes; it authorizes the transfer of any of such cases from the court wherein it was pending by reason of the enabling act and the Schedule to the Constitution to that court which would have had jurisdiction, had the proceeding been instituted since the admission of the state. The transfer is authorized to be made upon application of any person having a substantial interest therein, by petition, verified by his affidavit, or by affidavit of his attorney of record; but the statute does not make it mandatory on the persons interested to make such application, nor does it provide that the cause shall be transferred without such application. We cannot therefore concur in the contention of counsel that the effect of this statute was to oust the county court of Carter county of jurisdiction. No petition was ever filed by any one with the county court of

that county before the application for the order of sale was made, or at any other time so far as the records disclose, asking for a transfer of the cause to the county court of Johnston county, or of any other county. If it had been intended to provide by this statute that all causes, civil or criminal, *shall* be transferred to the county that would have had jurisdiction if they had been instituted since the admission of the state, why was the transfer authorized to be made only upon application of "any person having a substantial interest therein," or the criminal cases "upon the application of the defendant therein"? If it had been intended that the court in which any such cause was pending should have no further jurisdiction therein after the passage of the act, except to transfer it, we think the Legislature would have provided that the transfer of such cases should be made by the court upon it appearing from any source that such cause was one that would have been cognizable in the court of another county, if it had been instituted since statehood.

The amendatory act, also by language very similar to the language of section 1, further provides for the transfer of criminal cases from the court of any county or district in which the same is pending to the court of a county or district in which the case would have been properly triable, if it had been commenced after the admission of the state. If it was intended that the courts in which these civil and criminal proceedings were pending should lose all jurisdiction thereof, whether application for a transfer was made or not, then these acts placed it within the power of each defendant in a criminal case to defeat the prosecution against him, because the court is not authorized to make the transfer except upon his application. The defendant would be able to free himself from prosecution. We think no such meaning can be attributed to these statutes, but that it was intended only to give the parties interested in civil and criminal causes the opportunity to have them proceeded with and finally determined either in a court of the county or district in which the cause had been transferred by the provisions of the enabling act

and of the Constitution, or 'in the court of the county in which it should have been instituted if it had originated since statehood, according as the convenience and interest of the parties interested might lead them to choose.

Section 1, as amended, provides that civil causes "may, including probate matters, by any person having substantial interest therein, on petition verified by the affidavit of the applicant or his attorney of record, filed by the judge or the clerk of the court where such cause is pending, within sixty days from the passage and approval of this act, be transferred to the proper courts.   *   *   *"

We have been urged by the briefs of counsel for both parties to determine in this proceeding the effect of an order of the county court transferring the probate causes made upon application of a party interested, filed after the expiration of the 60 days from the passage and approval of this act. In support of their request, they have stated that the practice of the county courts has generally been to make transfer of such causes enumerated in said acts upon application of any party interested at any time, whether before or after the expiration of the 60 days mentioned in the act; and that a vast amount of land has been transferred under probate sales, orders for which have been made in proceedings thus transferred. Under the statement of counsel, we appreciate fully the importance of this question to the general public; but the question upon which they urge a decision is not involved in this case, and any expression made by us thereon would clearly be *obiter,* which fact alone is sufficient reason that we should not attempt to decide it here. And we therefore do not determine whether a sale made in a cause that has been transferred under said act upon application of a party interested, made after the expiration of 60 days after the approval of the amendatory act of March 12, 1908, is void upon collateral attack or only an irregularity requiring a reversal on appeal, or no error at all.

The answer alleges that the petition for the order of sale failed to state that the wards reside in Carter county; that such

fact was a jurisdictional fact required to be stated in the petition
without which the court had no authority to act. In support of
this contention, Woerner's American Law of Guardianship, p.
245, is cited, where that author says:

"The petition must affirmatively show that the ward resides
in the county where it is filed, though the estate may be in an-
other county."

The author supports this declaration of the law by only one
·citation, to wit, *Loyd v. Malone,* 23 Ill. 43, 76 Am. Dec. 179.
But the decision of the court in that case was controlled by a
statute which provided that an application for the sale of real
estate of a ward shall be made in the county where the ward re-
sides, although the estate may lie in a different county, and the
court construed said statute to require an affirmative statement
in the petition that the ward resided in the county where the
application was made. The statute of this state is different. Sec-
tion 1844, Wilson's Rev. & Ann. St., which controlled the pro-
cedure in this case, states what must be done in order to obtain
an order of sale in the following language:

"To obtain an order for such sale, the guardian must pre-
sent to the probate court of the county in which he was appointed
guardian, a verified petition therefor, setting forth the condition
of the estate of his ward and the facts and circumstances on which
the petition is founded tending to show the necessity or expe-
diency of a sale."

This statute requires the application to be made in the
county where the applicant was appointed guardian; but there is
no requirement that the application shall recite that it is made
in the county where the minor resides. The matters required by
this statute to be set forth in the petition are: First, the condi-
tion of the estate of the ward; and, second, the facts and cir-
cumstances on which the petition is filed tending to show the
necessity or expediency of the sale. No complaint is made here
that the petition does not comply with these two requirements.

It is next urged that no service of the order directing the
next of kin of the ward and all persons interested in the estate

to appear before the court and show cause why an order of sale should not be granted was made as required. Whether, if such irregularity existed, the same could be made the ground of a collateral attack, we shall advert to in subsequent consideration of other alleged irregularities in the proceeding by which the sale was made. The court, on hearing the application for the order of sale, ordered that the petition be set for hearing the 1st day of October, 1908, at which time the next of kin and all persons interested in the estate of the wards should appear and show cause, if any they had, why an order of sale should not be granted as prayed for in the petition, and further directed that personal service of the order be made upon the next of kin and persons interested in the estate, and that a copy thereof be published for four successive weeks in the Ardmoreite of Ardmore, Okla. No personal service was made upon the next of kin, and the order was published in the Ardmoreite on the 2d, 9th, 16th, and 23d days of September, inclusive, making 4 publications in 4 different issues of the paper, but only 22 days elapsed from the date of the first publication to the date of the last publication.

Section 1846, Wilson's Rev. & Ann. St. Okla., provides:

"That a copy of the order must be personally served on the next of kin of the ward, and all persons interested in the estate, at least fourteen days before the hearing of the petition or may be published at least three successive weeks in a newspaper, printed in the county, or if there be none printed in the county then in such newspaper as may be specified by the court or judge in the order."

This section of the statute requires a service of the order for a hearing upon the next of kin of the ward and all persons interested in the estate before hearing upon the petition for the order of sale, and provides two methods by either of which such service may be made, to wit: First, by personal service at least 14 days before the hearing of the petition; and, second, by publication at least three successive weeks in a newspaper printed in the county. This section does not authorize the court to require that service shall be made by both methods, or that service, when

made by publication, shall be for longer period of time than three successive weeks. The petitioner is required to obtain service of the order by only one method. The order of the court requiring service of the order to be made by both methods, and that service by publication should be for four successive weeks, instead of three, as provided by the statute, was a nullity. The statute prescribes how the entire service shall be made, and it is not left to the court by order to direct the method of service. It has no jurisdiction or discretion in the matter, except that when no newspaper is printed in the county where the application is made, and when the petitioner desires to make service by publication, then the court may in his order specify the paper in which the publication shall be made. Service was had by publication in a paper printed in Carter county for three successive weeks, as required by the statute, and was a sufficient valid service.

Section 1852, Wilson's Rev. & Ann. St., provides:

"All the proceedings under the petition of guardians for sales of property of their wards, giving notice, and the hearing of such petitions, * * * directing the sale to be made at public or private sale, * * * return of sale and application for confirmation thereof, notice and hearing of such application, * * * must be had and made as provided and required by the provisions of law concerning the estates of decedents, unless otherwise specifically provided in this chapter."

The law concerning the estates of decedents is contained in section 1667, which provides:

"The executor or administrator, after making any sale of real estate, must make a return of his proceedings to the probate court, which must be filed by the judge, at any time subsequent to the sale, either in term or vacation. If the sale be made at public auction and the return is made and filed on or before the first day of the next term thereafter, no notice is required of such return or of the hearing thereof, but the hearing may be had upon the first day of the term, or any subsequent day to which the same may be postponed. If the sale be not made at public auction, or if made at public auction, a hearing upon return of proceedings may be asked for in the return, or

is brought on for a hearing upon a day before the first day of the next term thereafter, or upon any other day than the first day of the next term after such sale, the court or judge must fix the day for the hearing, of which notice of at least ten days must be given by the judge, by notices posted in three public places in the county, or by publication in a newspaper, or both, as he may deem best.  *   *   *."

The sale in the case at bar was made on the 19th day of October, 1908, at public auction to the highest bidder. On the 20th day of October, a return of the sale was filed by the guardian with a prayer that the court enter an order setting said return for hearing, and that upon a hearing the sale be confirmed and proper deeds of conveyance ordered executed to the purchaser. The hearing on the return was set for October 30, 1908, and it was ordered by the court that 10 days' notice of such hearing be given by publication in a designated paper of the county and by posting notices in three public places in the county for 10 days before said hearing. The next regular term convened on the first Monday in the following January. The hearing of the return was therefore set and brought on before the first day of the next term after the sale. The decree of confirmation, a certified copy of which is attached to defendant's answer as an exhibit, recites that the required notice of 10 days preceding the day of such confirmation of sale was made as required by the order setting the return for hearing; but it is alleged in defendant's answer that only 9 days' notice was given, and the copies of proofs of publication attached to the answer as exhibits support this allegation, and it is conceded, for the purpose of this proceeding, that only 9 days' notice was given. A valid decree of confirmation of the sale was necessary to pass title to the purchaser at the sale, from whom it is alleged plaintiff herein derived his title. *Lumpkins v. Johnson,* 61 Ark. 80, 32 S. W. 65; *Greer v. Anderson,* 62 Ark. 213, 35 S. W. 215; *Alexander v. Hardin,* 54 Ark. 480, 16 S. W. 264; *Bone v. Tyrrell,* 113 Mo. 175, 20 S. W. 796; *Henry v. McKerlie,* 78 Mo. 416; Woerner, Am. Law of Guardianship, p. 274.

Does the failure to publish the notice of the date of the hearing on the return for the time prescribed in the order and by the statute render the decree of confirmation void on collateral attack? The answer to this question depends upon whether a compliance with the provisions of the statute as to giving notice of such hearing is mandatory and jurisdictional or is directory only. That all defects in a proceeding by a guardian for the sale of his ward's real estate will not render the proceeding an absolute nullity, and that some defects are mere irregularities which will require a reversal on appeal or a vacation of orders of sale and confirmation thereof on direct attack, but do not affect the validity of the sale on collateral attack, is generally agreed to by the courts. But as to what constitutes a jurisdictional defect, and what a mere irregularity, there is a sharp and irreconcilable conflict among the authorities. Many courts enforce the rule that every step in the proceeding prescribed by the statute is mandatory; that a failure or irregularity in the compliance with any of its provisions, such as notice of the hearing on the application for the order of sale, execution of special bond by the guardian, or notice of the confirmation, is fatal to the jurisdiction of the court to confirm the sale. Another line of authorities supports the rule that, upon the filing of a petition by the guardian setting out sufficiently the facts required by the statute to authorize an order of sale, the court obtains jurisdiction of the proceeding, and defects in the proceeding thereafter are irregularities which may be corrected on appeal, but cannot be made grounds of a collateral attack. Some of the text-writers declare that the former rule is supported by the weight of authority, and in this they are probably correct.

Although the statute in force in this state has been in force in this jurisdiction since the organization of the territory of Oklahoma, this question has never before been presented in any case arising within this jurisdiction to the court having highest appellate jurisdiction. On the Indian Territory side of the state, the provisions of Mansfield's Digest of the Statutes of Arkansas

applicable to probate proceedings were in force prior to the admission of the state, and all proceedings in probate had in that portion of the state prior to its admission were under said statute. The rule prevailing in Arkansas under the statute . before its adoption in the Indian Territory was that, where an order of sale by the court having probate jurisdiction had been made upon application of a guardian for such order, and a confirmation of the sale thereafter made, the decree of confirmation cured all defects or irregularities unless the decree was attacked directly. *Fleming v. Johnson et al.,* 26 Ark. 421; *Guynn et al. v. Mc-Cauley,* 32 Ark. 97; *Currie v. Franklin,* 51 Ark. 338, 11 S. W. 477. Want of notice of the sale was irregular and erroneous, but not jurisdictional, and would not affect the title on confirmation without appeal. *Beidler v. Friedell,* 44 Ark. 411.

The Supreme Court of the United Sttaes, which court was the court of highest appellate jurisdiction of causes arising in the courts of Oklahoma Territory, in the early case of *Grignon's Lessees v. Astor et al.,* 2 How. 319, 11 L. Ed. 283, which arose in the territory of Wisconsin under a statute very similar to the statute of this state, held that, in a proceeding by an administrator to sell the real estate of his indebted intestate:

"The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not is wholly immaterial, if no appeal is taken. The rule is the same whether the law gives an appeal or not. If none is given from the final decree, it is conclusive on all whom it concerns. The record is absolute verity, to contradict which there can be no averment or evidence. The court having power to make the decree, it can be impeached only by fraud in the party who obtains it. [*United States v. De La Maza Arredondo*] 6 Pet. 729 [8 L. Ed. 547]. A purchaser under it is not bound to look beyond the decree. If there is error in it of the most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of a purchaser . is as much protected as if the adjudication would stand the test of a

writ of error; so where an appeal is given but not taken in the time prescribed by law. These principles are settled as to all courts of record which have an original general jurisdiction over any particular subjects. They are not courts of special or limited jurisdiction. They are not inferior courts in the technical sense of the term, because an appeal lies from their decisions."

The county courts of this state are courts of record and have original general jurisdiction over all probate matters, and, as tő such matters, are courts of general jurisdiction, although an appeal from their decisions lies to the district courts.

A similar question came before that court in *Mohr et al. v. Manierre,* 101 U. S. 417, 25 L. Ed. 1052, which was an action for the possession of certain lands in the state of Wisconsin. The action was commenced in one of the state courts, and on application of the plaintiff was removed to the Circuit Court of the United States. The question of law presented by that proceeding was on validity of a sale of real estate by a guardian of a lunatic wherein no notice was given of the hearing of the application for the order of sale as required by the statute. The statute of Wisconsin (St. 1871, c. 94, § 4) provides that:

"Every such order to show cause shall be published at least four successive weeks in such newspaper as the court shall order and a copy thereof shall be served personally on all persons interested in the estate and residing in the county in which such application is made at least fourteen days before the day therein appointed for showing cause, provided however, if all persons interested in the estate shall signify in writing their assent to such order of sale, the notice may be dispensed with."

This statute is identical with section 1846, Wilson's Rev. & Ann. St., *supra,* except that the service of the order is required to be had both by personal service and by publication, and the time of publication was "at least four successive weeks," instead of "at least three successive weeks." The Supreme Court of Wisconsin, in *Mohr v. Tulip,* 40 Wis. 66, had held that the giving of the notice as prescribed by the statute was jurisdictional; but the Supreme Court of the United States, in *Mohr v. Manierre, supra,* refused to follow the construction of the statute by the

Wisconsin court, and adhered to the rule formerly laid down by it in *Grignon's Lessees v. Astor, supra.*

In *Thaw v. Falls et al.,* 136 U. S. 548. 10 Sup. Ct. 1044, 34 L. Ed. 531, where a similar question was under consideration, Mr. Justice Gray, delivering the opinion of the court, said:

"In this form of proceeding, the guardian sufficiently and fully represents the infants, and no notice to them was required by the statute of Maryland, or by any general rule of law. The want of proof of such notice or of any record of the evidence on which the orphans' court proceeded in making the order, or the chancery accounting by the guardian for the proceeds of the sale, is immaterial. The orders of those courts within their jurisdiction were conclusive proof in favor of the purchaser and grantee at the sale, and cannot be collaterally impeached on any such ground."

The Supreme Court of California, in *Scarf v. Aldrich,* 97 Cal. 360, 32 Pac. 324, 33 Am. St. Rep. 190, under a section of the code of that state identical with section 1846, Wilson's Rev. & Ann. St., *supra,* held that a proceeding by a guardian to obtain license to sell his ward's lands is not one between adverse parties of which the court does not acquire jurisdiction, until due service is made of the notice of application, but rather a proceeding *in rem* carried on by and in the interest of the ward through his legal representative, and that failure to publish the notices for the full time prescribed by the statute does not defeat the jurisdiction of the court where the petition for the order of sale setting up sufficient facts to authorize a sale under the statute had been filed. The same statute exists in South Dakota. The Supreme Court of that state, in *Blackman et al. v. Mulhall et al.,* 19 S. D. 534, 104 N. W. 250, wherein an administrator's sale was attacked collaterally upon the grounds that the notice of the hearing on the application for the order of sale was defective, and that insufficient notice of the sale was made (the decree of confirmation reciting, however, that the sale had been legally and fairly conducted), said:

"This court must assume, therefore that the probate court

had before it the required proof showing that all the provisions of the statute had been complied with. No claim is made in this case, as we understand the counsel, that the proceedings in the probate court were not conducted in good faith and the property sold for a fair price, and, while there appears to be some irregularities that may possibly entitle the proper party appealing to a reversal of the decision of the probate court, they are not irregularities that affect the jurisdiction of the court or render its proceeding void."

And speaking of the insufficiency of the notice of the hearing upon the application for the order of sale, the court said:

"Where there is some notice, an irregularity or insufficiency can not be questioned in a collateral proceeding."

In *Perkins v. Gridley*, 50 Cal. 97, it was held that, in the absence of an order fixing the date for hearing the return of sale and the notice thereof by the clerk, the court has no power to confirm the sale; but, in that case, the decree of the court was attacked in a direct proceeding. The same court, in *Zilmer v. Gerichten et al.*, 111 Cal. 73, 43 Pac. 408, which was an action of ejectment wherein plaintiff's title was based upon an administrator's conveyance, the defense being: First, that it did not appear that the order to show cause had been published as required by law; second, that the notice of sale had not been published for the time required by law and the order of the court; and, third, that no notice of hearing on the report of said sale was given and no order of court made fixing the date of said hearing—held, under a statute identically the same as ours, that:

"Conceding, however, that the proceedings for confirmation of the sale were irregular as claimed, and that notice of the sale was not published for the time ordered by the court, yet this irregularity of error in the exercise of unquestionable jurisdiction would not invalidate the sale nor the administrator's deed to the extent of making it voidable by collateral attack made upon them in the court below."

We do not deem it necessary to review the authorities supporting the contrary rule. If we were not impressed with the reasoning by which the courts in the foregoing cases support

their conclusions, there are other reasons that make the rule of those cases highly persuasive upon us. Many transactions in guardian's title conveyed under the statute now under consideration before the admission of the state occurred in that portion of the state formerly constituting Oklahoma Territory, and, while the appellate courts were never called upon to construe this identical statute after its adoption in the territory, the highest appellate tribunal of that jurisdiction, to wit, the Supreme Court of the United States, had, in *Mohr v. Manierre,* under a statute practically the same as ours, announced the rule that defects in the steps of a proceeding made subsequent to the acquiring of jurisdiction of a proceeding for the sale of real estate by a guardian were not fatal to the jurisdiction of the court. No doubt the many transactions in probate titles that have been made in Oklahoma Territory side of the state were made upon the presumption that, if the question was not settled by that decision, upon its being presented to that court under the statute of Oklahoma, the court would adhere to its former holding made under a similar statute; and, as to titles conveyed by guardians on the Indian Territory side of the state under the statute there in force, the force of the decisions of the Supreme Court of Arkansas rendered prior to the adoption of the statute, and the rule of the Supreme Court of the United States, the court of final appellate jurisdiction of causes arising in that territory, would impel us, in the absence of fraud, to hold that the decree of confirmation made before the admission of the state cured all irregularities and errors that occurred after the court acquired jurisdiction by the filing of the guardian's application for order of sale, from which no appeal was taken. By following the rule in *Mohr v. Manierre* and *Grignon's Lessees v. Astor et al.,* we adopt a rule which may be applied with uniformity to all conveyances in probate proceedings, whether occurring in the Indian Territory or Oklahoma Territory, or in the state after its admission.

Other assignments of error are urged in briefs of plaintiff in

error; but, subsequent to the filing of his briefs, he has, by written stipulation filed in the cause, waived them.

There being no alleged error urged requiring a reversal of the case, the judgment of the trial court is affirmed.

All the Justices concur.