### MANN et al. v. OSBORNE et al.

No. 17689.    Opinion Filed Nov. 15, 1927.

(Syllabus.)

1. **Constitutional Law—States—Temporary Office of Enabling Act and Schedule to Constitution.**

"The purpose of the Congress in the Enabling Act, and the Constitutional Convention in the Schedule, was to provide the temporary means necessary for putting the government established by the Constitution in motion without disorder or collision, and not to provide a permanent system of laws for the government of the new state." State ex rel. West, Atty. Gen., v. Frame, 38 Okla. 446, 451, 134 Pac. 405.

2. **Guardian and Ward—Validity of Sale of Land—Validity of Transfer of Guardianship Following Statehood.**

While Schedule 23 of the Constitution of this state provided that the district court of any county, the successor of the United States Court in the Indian Territory, should transfer to the county court of such county all probate proceedings, it was not intended by this to provide the only and exclusive procedure by which such matters could be transferred from such district court to the county court. But in a guardianship proceeding, in which the district court had taken no action to transfer, and in the meantime the Legislature had enacted chapter 16, art. 3, sec. 1, p. 212, Session Laws of 1907-8, and in compliance therewith, upon a proper petition being presented to said district court asking that said guardianship be transferred to the county court of another county having jurisdiction of the proceeding under the legislative act, held, that the district court had the power to make the transfer, and that the trial court did not err in sustaining a demurrer to plaintiff's petition attacking a sale of land made in the county court, to which the same was transferred, on the sole ground that the transfer was void.

Commissioners' Opinion, Division No. 1.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by Alice Mann, nee Byrd, and Lonnie Mann, her husband, against J. H. Osborne et al. From a judgment for defendants, plaintiffs appeal. Affirmed.

R. D. Howe and Green & Green, for plaintiffs in error.

Wellington L. Merwine and Horton & Gill, for defendants in error.

REID, C. The parties stand here as they did in the trial court, and they will be herein referred to as plaintiffs and defendants.

The plaintiff, Alice Mann, nee Byrd, joined by her husband, Lonnie Mann, brought this action to recover her allotment as a Creek freedman, against J. H. Osborne, to whom she alleged in her petition had been sold the land in guardianship proceedings of the allottee, under an order of the county court of McIntosh county. She joined the other defendants as lienholders, or as claiming some other adverse interest in the property.

She alleged that the defendant Osborne claimed title to the property through a pretended guardianship of her as a minor, and

sale and deed made in such proceeding in the county court of McIntosh county; that the sale was absolutely void for the reason that the guardianship proceeding had been originally in the United States Court sitting at Okmulgee, and by an invalid order of the district court of Okmulgee county had been transferred from that court to the county court of McIntosh county; that the petition for said transfer was filed by the guardian in the district court of Okmulgee county on the 7th day of May, 1908, and that the court, on the 13th day of May, 1908, made and entered an order transferring the case to the county court of McIntosh county; that the sale made by her guardian on the 7th day of July, 1911, was void for the reason that the county court of McIntosh county never had any jurisdiction in the matter, and that therefore the various mortgages and a lease given to other defendants by Osborne were void; that the guardian's deed and these instruments created a cloud on her title, and that the defendants had been in possession of the property for 15 years prior to the filing of the suit. She prayed for cancellation of the instruments as clouds on her title, for damages, and for possession of the land.

The defendant filed a general demurrer to the petition, and also a special demurrer claiming that plaintiff's cause of action was barred by limitation, if any she ever had. The court sustained the demurrers, to which plaintiff excepted, gave notice of appeal, and brings the questions here for review.

The substance of plaintiff's contention is, that the district court of Okmulgee county, as the successor of the United States Court sitting at Okmulgee, had no authority to transfer this guardianship proceeding to any other court than the county court of Okmulgee county, and that therefore a deed made in the guardianship proceedings in McIntosh county is absolutely void. Under the state of facts alleged in plaintiff's petition by section 19 of the Enabling Act. the district court of Okmulgee county became the successor of the United States Court sitting at Okmulgee. Davis v. Caruthers, 22 Okla. 323, 97 Pac. 581; Eaves v. Mullen, 25 Okla. 679, 107 Pac. 433; Scott v. McGirth, 41 Okla. 520, 139 Pac. 519. It therefore appears that upon the advent of statehood, the guardianship case, in its then situation, fell within the operation of section 23 of the Schedule of the Constitution of this state; the applicable part of which is as follows:

"The district court of any county, the successor of the United States Court for the
128—2

Indian Territory, in each of the counties formed in whole or in part in the Indian Territory, shall transfer to the county court of such county all matters, proceedings, records, books, papers, and documents appertaining to all causes or proceedings relating to estates: Provided, that the Legislature may provide for the transfer of any of said matters and causes to another county than herein prescribed."

The Legislature convened on the 2nd day of December, 1907, and on December 21, 1907, passed an act providing for the removal of those causes, both civil and criminal, including probate proceedings, transferred from the United States Courts in the Indian Territory to the courts of this state. 1907-8 Session Laws, chapter 16, art. 1, p. 205. This was amended by an act of the Legislature approved March 12, 1908, chapter 16, art. 3, p. 212, wherein section 1 of the subsequent act was substituted for section 1 of the Act of December 21, 1907, and the section 1, as amended, which is the only one applicable to this question, then read as follows:

"Section 1. That all those civil cases transferred from the courts of the territory of Oklahoma and the United States Courts in the Indian Territory to the courts of this state, as transferred by acts of Congress and accepted by the Constitution, which would have been properly triable in any court, or county or district of this state, had such suit or proceeding been commenced after the admission of this state into the Union, including records formerly belonging to the United States Commissioners' courts and all papers of mayors of cities and incorporated towns having and exercising ex officio jurisdiction as United States Commissioners in that part of the state formerly known as Indian Territory, that may be in the hands of the clerks of the various district courts of that portion of the state may, including probate matters, by any person having a substantial interest therein on petition verified by the affidavit of the applicant, or his attorneys of record, filed with the judge or clerk of the court where such cause is pending within 60 days after the passage and approval of this act, be transferred to the proper courts of such county or district, and that all books, records, pending cases, papers, proceedings, liens judgments and executions pending in a justice of the peace court of any county are hereby transferred to some justice of the peace court of the county in which, if originally brought in said court, the defendant lives, or if the defendant be a nonresident, then to the county where the plaintiff lives or the defendant has property, and when such records are transferred, as above provided for said court shall have full and complete jurisdiction of all cases and proceedings so transferred: Provided,

that all transfers of cases, papers, books, proceedings, made or attempted to be made by mayors of incorporated towns to the proper court are hereby legalized and made valid."

In the case of Davis, County Judge, v. Caruthers,. District Judge, 22 Okla. 323, 97 Pac. 581, the county judge of Creek county brought an action for mandamus against the district judge of that county, wherein it was sought by original action filed in this court, on the 19th day of May, 1908, to compel the district judge to transfer all probate proceedings and papers which had come to that court from the United States District Court at Sapulpa to the county court of Creek county. And, in awarding the writ, the court said:

"When the state was admitted into the Union, it became the duty of the judge of the district court of Creek county, as successor of the United States Court at Sapulpa, to cause to be transferred to the county court of said county, all matters. proceedings, records, books, papers, and documents pertaining to all original causes or proceedings relating to estates that came to said court from said United States Court. At most, section 1 of the Act of December 21, 1907, empowers any one having a substantial beneficial interest in any probate matter that came from the proper United States Court to any district court, where such district court has failed to transfer the same to the proper county court, on petition verified by the affidavit of such beneficiary, or his attorney of record, to require the same to be transferred to the proper county court whether it be the county in which the United States Court had been located or not. But as to whether or not there is such a conflict between the provisions of section 23 of the Schedule and section 1 of said act, as would render any part of the act invalid, it is not now necessary to determine. It having become the duty of the district court, as a matter of law, to transfer to the county court of Creek county all matters. proceedings. records. books. papers. and documents pertaining to all original causes or proceedings relating to estates transmitted to it from the United States Court for the Indian Territory at Sapulpa, where the judge of such court refuses to make such order. it is proper that a writ of mandamus should issue requiring such order to be made."

We have quoted at some length from the foregoing case so that it would be understood that we had not overlooked the holding there made, to the effect that it was the duty of the district court of Creek county to transfer all probate proceedings to the county court of that county, as provided by Schedule 23. supra ; but in that case the exact question here presented was not considered and de-

cided, and this is expressly stated in the opinion. In that case no petition had been presented to the district court asking that a proceeding be transferred direct from that court to the county court of another county, which would, under the Act of the Legislature, be then the court of jurisdiction. But in the present case, the district court of Okmulgee county had taken no action in the proceeding when the Legislature enacted the foregoing statute, and when a proper petition was presented to it asking that the proceeding be transferred to McIntosh county, and upon which the transfer was made.

The transfer of causes or proceedings from one court to another involves only a question of procedure, which is not usually made the subject of control by Constitutions, but left to legislative enactments. The only purpose of the Schedule to the Constitution of this state was to provide for the transition from the old government to the new one. It was not intended by it to provide any exclusive method of procedure in the courts after the new state began the operation of its functions through its Legislature, which had the power to fix rules of procedure to be followed. We find this principle to be well stated in the following:

"Ordinances and schedules appended to a Constitution, as distinguished from the permanent and fundamental law embodied in the Constitution itself, are temporary enactments for the purpose of effecting a transition from the old government to the new, and of putting the provisions of the new Constitution into effect." 12 C. J. 696.

"In order that no inconvenience may result by reason of changes arising out of the adoption of a new Constitution, it is the custom to adopt a schedule which will set forth temporary regulations covering the interim before the new machinery of government is thoroughly established. The only office of a schedule is to provide for the transition from the old to the new government, and to obviate confusion which would otherwise arise during the transition period, and this fact may be material in determining the construction and effect to be given to provisions contained in schedules." 6 R. C. L. 36.

The preamble to the Schedule to the Constitution of this state fully defines its purpose and office in the following language:

"In order that no inconvenience may arise by reason of a change from the forms of government now existing in the Indian Territory and in the territory of Oklahoma, it is hereby declared as follows:

In the case of State ex rel. West, Attorney

General, v. Frame, 38 Okla. 446, 134 Pac. 403, this court has defined the office of the Enabling Act, and also the Schedule of the Constitution of this state, in the following language:

"The purpose of the Congress in the Enabling Act and the Constitutional Convention in the Schedule was to provide the temporary means necessary for putting the government established by the Constitution in motion without disorder and collision and not to provide a permanent system of laws for the government of the new state," and this purpose is "stated in the preamble to the schedule."

In the Richmond Mayoralty Case, 16 Grattan, 673, the Supreme Court of the state of Virginia had under consideration the effect of a certain provision in the Schedule to the Constitution of that state, under which Constitution the state had returned to the Union after the Civil War. It was contended that by the Schedule of the Constitution, the mayor of the city of Richmond, who held his office by appointment of the Military Governor, was entitled to hold his office until his successor was elected and qualified. And under the express terms of the Constitution, a time was fixed for the election of such officer by cities, and that time had not arrived, and therefore no successor had been elected when the Legislature passed an act giving to the Governor power to appoint the councilmen of the city of Richmond, which councilmen, by the same act, were authorized to appoint a mayor who could immediately proceed upon the discharge of his duties. This provision seemed to be at variance with the Schedule to the Constitution, as it, in effect, ousted the holder of the office before his term expired by the election and qualification of his successor, as provided in the Schedule. The court held that the Legislature had the power to pass this statute, and said:

"The preamble and first section of that schedule show the only purpose for which it was adopted, and that it was not intended to secure to incumbents then in office, any immunity in their offices, or power to continue to hold them for any length of time, against the expressed will of the Legislature to the contrary. 'That no inconvenience may arise from the changes in the Constitution of this state, and in order to carry the same into complete operation, it is hereby declared, that' is the language of the preamble. Thus plainly showing that the Convention was looking to public convenience, and not to the private interest of individuals in continuing to hold office; that it was acting in this matter, solely because there might be necessity for some such action before it could

be taken by the Legislature; and not because they intended to place this matter beyond the reach or control of the Legislature. All the safeguards that were deemed necessary for the conservation of private rights were embodied in the Constitution itself. The only office of a schedule is to provide for a transition from the old to the new government, and to obviate inconveniences which would otherwise arise from such transition. The Convention acts in this matter as an ordinary Legislature, and only because there is necessity for such action before a Legislature can or will be convened under the Constitution, To be sure, if a Convention, in framing the schedule, should plainly show an intention to place any of its provisions beyond the control of the Legislature, such provisions being the act of the representatives of the sovereignty of the state without any constitutional restrictions, would be as effectual and binding as if they were embodied in the Constitution itself. But unless such an intention plainly appears, the presumption is, that the provisions of the schedule are subject to future legislation."

And, the above case, defining the office of the Schedule to a Constitution, has also been referred to with approval by this court in the case of Coyle v. Smith, 28 Okla. 121, 113 Pac. 944.

Section 1 of the Act of March 12, 1908, was comprehensive enough in its scope to include a probate proceeding whether the same was then remaining in the district court to which it had been assigned by section 19 of the Enabling Act, or had theretofore been transferred to the county court by the district court as provided for in Schedule 23, supra. The makers of the Constitution were not of the opinion that the Enabling Act transferred probate proceedings to the county court by force of its terms, and evidently understood that the proceedings became lodged in the district court of the county, which was the successor of the United States Court in that county, otherwise it would not have been provided by Schedule 23, supra, that such district courts should transfer these proceedings to the county court of such county. The district court would not have been required to act upon matters which had not come within its jurisdiction.

Schedule 23, supra, does not show upon its face that it was intended that the Legislature should have no power to provide for the transfer of probate proceedings other than from the district court to the county court of the same county, and thereby providing an exclusive method of transferring those cases from the district court to which they had been assigned by the Enabling Act. Upon first consideration there may be an in-

clination to give the Schedule the same effect as if it were part of the Constitution, embodied therein, with no power in the Legislature to enlarge or extend the power therein given the district court. But when we consider the purpose of the Schedule as stated in the preamble, and as defined by the courts and text-writers, we are driven to the conclusion that the framers of the Constitution never intended to give to this section of the Schedule a fixed power not usual. It must be borne in mind that the transfer by the district court of Okmulgee county in this case was made after the new state government had begun to function in all its departments, and after the act of the Legislature governing the situation then presented was applicable. When the Legislature spoke upon the matter provided for in the Schedule, there was no reason why the Schedule should operate at variance with the act of the Legislature. The district court retained the power, under the Schedule, to transfer probate proceedings remaining on the docket of that court to the county court of Okmulgee county, but upon proper petition could also transfer a case to the county court of another county having jurisdiction of the proceeding under the legislative act.

We have therefore concluded that a proper petition having been presented to the district court of Okmulgee county, where the guardianship proceeding yet remained, asking that it be transferred to the county court of McIntosh county, the district court had the power to make the transfer under the authority given by the act of the Legislature then in force.

It appearing that the sale is attacked on the sole ground that the transfer of the proceedings to McIntosh county was void, and having found that the transfer was valid, it follows that the court did not err in sustaining the general demurrer to the petition, and that the case should be affirmed.

BENNETT, TEEHEE, LEACH, and FOSTER, Commissioners, concur.

Note.—See under (1) 12 C. J. p. 696, §34; 36 Cyc. p. 833 (Anno); 6 R. C. L p. 36; 2 R. C. L. Supp. p. 5. (2) 12 C. J. p. 696, §34; 25 C. J. p. 985, §363.